Stack v. Royce.

————

HANNAH STACK v. WILLIAM ROYCE.

[FILED JUNE 11, 1892.]

1. Administrators: LICENSE: ORDER TO SHOW CAUSE. It is not necessary to state, in an order to show cause, why a license should not be granted an administrator to sell the lands of his intestate to pay the debts of the estate, the names of the heirs, or other interested parties. The order is sufficient to confer jurisdiction over the person if it directs "all persons interested in the estate" to appear at the time and place named in the order.

2. ———: ———: GRANTING AT CHAMBERS. The district court of the county in which letters of administration were granted, or the judge thereof at chambers, has exclusive original jurisdiction to hear the petition of an administrator for a license to sell real property for the payment of the debts of the estate, even though the lands are located in another county.

3. ———: ———: PETITION: FILING. Such petition and the license must be filed in the office of the clerk of the district court of the county in which administration was granted.

ERROR to the district court for Nuckolls county. Tried below before MORRIS, J.

56

*Batty, Casto & Dungan,* for plaintiff in error:

The probate court of the county in which the administrator was appointed has "exclusive original jurisdiction" (*Seward v. Didier*, 16 Neb., 58; Maxwell, Pl. & Pr., 87; *Seymour v. Ricketts*, 21 Neb., 240), and the county court of Cass county, in which the lands were located, would have no jurisdiction at all, and any proceedings had before it for a sale of the land located in said county would be utterly void. (*Calloway v. Kirkland*, 50 Ala., 401; *Gordon v. Howell*, 35 Ark., 381; *Woods v. Monroe*, 17 Mich., 238.) Unless an administrator proceed in the particular court, and by the mode pointed out in the statute, there will be such a want of jurisdiction as to render the sale void. (*Wright v. Edwards*, 10 Ore., 298; *In re Mahoney*, 34 Hun [N. Y.], 501; *Hordmen v. Short*, 18 Ill., 61; *Spencer v. Jennings*, 114 Pa. St., 618; *Lynch v. Hickey*, 13 Ill. App., 139.) The sureties did not qualify before the judge or the clerk, but before a notary public and the attorney of record of the administrator, and the sale upon that ground should be avoided. (*Wood v. Monroe*, 17 Mich., 238.) The court had no jurisdiction over the person of Hannah Stack, and consequently the proceedings could not affect her rights. (*Jenkins v. Young*, 35 Hun [N. Y.], 569; *Underwood v. Underwood*, 22 W. Va., 203.)

*L. T. Stocking, contra:*

Jurisdiction is power "to hear and determine" a particular cause or matter in controversy. (*Smiley v. Sampson*, 1 Neb., 56; *Sheldon's Lessee v. Newton*, 3 O. St., 494; *Gregnon's Lessee v. Astor*, 2 How. [U. S.], 338.) The meaning of the word court in sec. 68, ch. 23, Comp. Stats., is to be determined by reference to other sections of the same chapter where the term "judge" is used interchangeably. (*Davis v. Hayden*, 3 Scam. [Ill.], 35; *Zarresseller v. People*, 17 Ill., 101; *Stribling v. Prettyman*, 57 Id., 371;

*Biggs v. Clapp,* 74 Id., 335.)   In the light of Webster's definition of the word " court " and of the other parts of this statute if a sufficient petition should be *"presented"* to a judge of the district court anywhere in his district the matter would be *coram judice;* the judge could make a valid order to show cause at chambers anywhere in his district; and at that time and place, if said order is complied with, the judge can make a valid order of sale. *(Stewart v. Daggy,* 13 Neb., 290 ; *Dietrichs v. R. Co.,* 14 Id., 356.)   The order need not recite the names of the persons' interested. *(Stow v. Kimball,* 28 Ill., 93 ; *Gregnon's Lessee v. Astor,* 2 How. [U. S.], 338 ; *McClay v. Foxworthy,* 18 Neb., 295 ; *Sheldon's Lessees v. Newton,* 3 O. St., 504.) Confirmation cures all irregularities. ( *Wilcox v. Raben,* 24 Neb., 368 ; *Saxon v. Cain,* 19 Id., 488 ; *Neligh v. Keene,* 16 Id., 407.)   A purchaser is not bound to look beyond the decree. *(Gregnon's Lessee v. Astor,* 2 How. [U. S.], 340.)   Granting the license cannot be attacked collaterally. *(Franklin v. Kelley,* 2 Neb., 112 ; *Gregnon's Lessee v. Astor,* 2 How. [U. S.], 339 ; *Phillips v. Bridge,* 11 Mass., 227 ; *U. S. v. Arredondo,* 6 Pet. [U. S.], 729 ; *McPherson v. Cunliff,* 11 S. & R. [Pa.], 429.)

NORVAL, J.

This is an action of ejectment brought by the plaintiff in error, to recover the possession of the northwest quarter of section 11, in township 4, range 8 west, in Nuckolls. county.

There was a trial to a jury, who, under the direction of the court, returned a verdict for the defendant.   Plaintiff presented a motion for a new trial, which was overruled, and judgment entered on the verdict.

The plaintiff claims title to, and the right of possession of, the real estate as the sole devisee under the last will and testament of James Stack, deceased.   The defendant is the tenant of one Mary B. Snyder, who claims title

under a deed from the administrator of the estate of said James Stack, deceased, and other *mesne* conveyances in her chain of title.

On the 8th day of May, 1878, one James Stack, then a resident of Clay county, died at Harvard, in said county, seized of the real estate in litigation. He left a will bequeathing all his property to his wife, the plaintiff herein. On the 15th day of June, 1878, the will was admitted to probate by the county court of Clay county, and the plaintiff was appointed as sole executrix. Subsequently she resigned as executrix, and on the 2d day of February, 1880, one William Hammond was appointed by the county court of Clay county administrator of said estate with the will annexed.

Upon the trial the defendant introduced in evidence, over the objection and exception of plaintiff, the petition of the administrator of the estate of said James Stack for license to sell the real estate in controversy, the order of the district judge fixing the time and place of hearing the same, the license issued to the administrator, report of sale, order of confirmation, and the deed of the administrator to the purchaser. Plaintiff now complains of the admission of said testimony, and of the instruction of the court to the jury to return a verdict for the defendant.

It appears from an inspection of the petition of the administrator for license, and the proceedings had thereunder, that on the 17th day of May, 1880, at Clay Center, the Hon. A. J. Weaver, the judge of the first judicial district, which included the county of Clay, on the petition of said administrator for license to sell the real estate above described, to pay the debts of said estate and charges of administration, made an order that all persons interested in said estate appear before him at his chambers, at Falls City, on the 24th day of July, 1880, to show cause why a license should not be granted to the administrator to sell said real estate. The petition and the order to show cause

are entitled in the district court of Nuckolls county, and
on the 20th day of May, 1880, were filed in the office of
the clerk of said court.  Hearing was had at the time and
place stated in the order to show cause, and thereupon Judge
Weaver issued a license to said Hammond to sell said real
estate, on his giving a bond in the sum of $1,000, to be
approved by the clerk of the district court of Nuckolls
county.  By the license the administrator was ordered to
make return of his doings thereunder to the district court
of said county, and the clerk of said court was directed to
copy the license into his journal, file the original in his
office, and furnish the administrator with a certified copy
of the same.  All this was done as directed, the license be-
ing filed on September 11, 1880.  The bond of the admin-
istrator was filed and approved by said clerk on September
17th.  On the day following, previous notice of the time
and place of sale having been given, the land was sold, Mary
A. Colvard being named in the report of sale as the pur-
chaser.  On the 7th day of November, 1881, the adminis-
trator made and filed his report of sale in the office of the
clerk of the district court of Nuckolls county.  The next
day said court approved and confirmed the sale, and ordered
the administrator to execute and deliver a deed to the pur-
chaser.  Subsequently, on the 2d day of May, 1883, the
administrator made his deed, in which S. C. Colvard is
named as grantee.

It appears that a mistake was made by the administrator
in his report of the sale, in the Christian name of the pur-
chaser, the name of the purchaser being S. C. Colvard, in-
stead of Mary A. Colvard, as reported.  On motion of the
administrator the district court of Nuckolls county, on the
9th day of October, 1883, ordered the report corrected to
correspond with the facts, which was done.

It is claimed by the plaintiff in error that the proceed-
ings, under which the administrator's deed is based, are
without jurisdiction and void, for the reason that the court

had no jurisdiction over the person of Hannah Stack, and because the proceedings were not had in the district court of Clay county, that being the county in which the administrator was appointed. The determination of the question of jurisdiction thus presented necessitates an examination and construction of some of the provisions of the statute governing proceedings by administrators and executors in the sale of real estate which were in force at the time the license in question was granted.

Section 67, chapter 23, Compiled Statutes 1881, entitled "Decedents," provides, "When the personal estate of any deceased person, in the hands of his executors or administrators, shall be insufficient to pay all his debts, with the charges of administering his estate, such executors or administrators may sell his real estate for that purpose, upon obtaining a license therefor, and proceeding therein in the manner hereinafter provided."

Section 68 provides that "In order to obtain such license, the executor or administrator shall present a petition to the district court from which he received his appointment, setting forth the amount of personal estate that has come to his hands, and how much thereof, if any, remains undisposed of; the debts outstanding against the deceased, so far as the same can be ascertained; a description of all the real estate of which the testator or intestate died seized; and the condition and value of the respective portions or lots; which petition shall be verified by the oath of the party presenting the same."

Section 69 provides that "If it shall appear by such petition that there is not sufficient personal estate in the hands of the executor or administrator to pay the debts outstanding against the deceased, and the expenses of administration, and that it is necessary to sell the whole or some portion of the real estate for the payment of such debts, the judge of the district court shall thereupon make an order, directing all persons interested in the estate to

appear before him, at a time and place therein to be speci-fied, not less than six weeks and not more than ten weeks from the time of making such order, to show cause why a license should not be granted to the executor or adminis-trator applying therefor, to sell such real estate of the de-ceased as shall be necessary to pay such debts."

Section 70 provides that "A copy of such order to show cause shall be personally served on all persons interested in the estate, at least fourteen days before the time ap-pointed for hearing the petition, or shall be published four successive weeks in such newspaper as the court shall order; *Provided however*, If all persons interested in the estate shall signify in writing their assent to such sale, the notice may be dispensed with."

Section 79 provides that "If the judge of the district court shall be satisfied, after a full hearing upon the peti-tion, and an examination of the proofs and allegations of the parties interested, that a sale of the whole or some por-tion of the real estate is necessary for the payment of valid claims against the deceased, and charges of administration, or if such sale be assented to by all persons interested, he shall thereupon make an order of sale, authorizing the ex-ecutor or administrator to sell the whole, or so much and such part of the real estate described in the petition as he shall judge necessary or beneficial."

The point is made in the brief of counsel for plaintiff that the court, in the proceedings had to sell the lands in contro-versy, and had no jurisdiction over the person of Hannah Stack, for the reason she was not named in the order to show cause why a license should not issue. The order is entitled : "In District Court, First Judicial District, Nuck-olls County, Nebraska. In the Matter of the Application of Wm. H. Hammond, Administrator of the Estate of James Stack, Deceased, to sell real estate to pay debts." In the body "it is ordered that all persons interested in said estate appear," etc. A copy of the order to show cause was pub-

lished in a newspaper for the length of time required by
section 70, quoted above.   That was sufficient.   It was not
necessary that the order should state the names of the heirs
or of the persons interested.   The statute does not require
it, but prescribes that the court shall make an order direct-
ing all persons interested in the estate to appear before him
at a time and place therein named.   As said by Judge
MAXWELL in his opinion in *McClay v. Foxworthy*, 18 Neb.,
298, "A proceeding under the statute to sell real estate of
the deceased for the payment of debts against ·the estate is
not, strictly speaking, an action.   It is purely a proceeding
*in rem*, where the principal questions involved are the
amount of debts outstanding against the estate, the amount
of personal property available for the payment of the debts,
and the necessity to sell the land for which license is sought
for the payment of the same.   The proceeding is not ad-
versary in its character, in the sense in which the term is
used in an action, as only so much of the estate descends to
the heirs as exists after the payment of the debts."

In *Hobson v. Ewan*, 62 Ill., 146, it was held that the
notice by an administrator of his application for an order
to sell real estate, directed "to all persons interested," was
sufficient, and that it was not necessary to state in the
notice the names of the heirs, or other interested parties.

The petition presented by the administrator to Judge
Weaver contained all the facts necessary to be set forth in
a petition of that kind, or required by the statute.   This
is conceded by the plaintiff.   The power of a judge of the
district court, in a proper case, to hear and determine at
chambers an application of an administrator or executor
for a license to sell real estate to pay debts cannot be
doubted.   Not only is such authority impliedly conferred
by the provisions of the sections above quoted, but such
jurisdiction is expressly granted by section 339 of said
chapter 23, which provides that "the judge of the district
court of the state may, upon the application of an executor,

administrator, or guardian to sell or dispose of the real estate of decedents, spendthrifts, or minors, hear and determine the same at chambers in vacation," etc.; and the power thus conferred may be exercised by a district judge anywhere within his judicial district, or by the district court of the proper county, when in session.

The next important question to be determined is, whether the petition for such license is required to be filed in the district court, and if so, of which county? The one in which administration is granted, or the district court of the county where the lands lie? Or, is the application restricted to any particular district court of this state?

Counsel for the defendant contends that the petition of an administrator or executor for license to sell real estate to pay debts is not required to be filed in any court, or with any officer of the same. He cites in support of his position section 68 above quoted, which provides that "in order to obtain such license the executor or administrator shall present a petition," etc. The word "present," in the connection used, was intended by the legislature to include not only the bringing of the petition to the notice or attention of the court or judge, but the filing of the application with the clerk of the district court having jurisdiction of the proceedings. It is unreasonable to suppose that the lawmakers intended so important a paper as the petition, which is the foundation of the proceedings, and without which the district court or judge has no power or authority to act, need not be made a matter of record. Courts speak only through their records. Looking to the proviso clause of section 339 of said chapter 23, it will be seen that in all cases where a judge of the district court orders a sale of any real estate while sitting at chambers, it is made his duty to cause a copy of the order to be filed in the office of the clerk of the district court, "and said clerk shall thereupon record said order in the record book of said court before any sale shall be made as aforesaid." It would be a strange pro-

ceeding to require the order to be recorded, and yet not preserve the petition, the jurisdictional paper upon which the license and all subsequent proceedings are based. That such petition must be filed and preserved by the clerk, we have no doubt.

To the district court of which county must the application be presented and the record of the proceedings be made? The language of section 68 is, that the "administrator shall present a petition to the district court from which he received his appointment." It may be observed that section 16 of article 6 of the constitution confers upon county courts original jurisdiction in all matters of probate, so that the district courts of the state have no power to appoint administrators or executors. Prior to the admission of Nebraska as a state into the Union, the probate courts had the power to grant license to administrators to sell real estate to pay debts and costs of administration. Section 68, as copied above, with the exception that the word "probate" appeared in the place of "district," was enacted by the territorial legislature in 1860. By section 4 of article 4 of the constitution of 1867 the power to decree the sale of real estate was taken from courts of probate, and the legislature in 1873 changed section 68 as originally passed, by striking out the word "probate" and inserting the word "district" in its place. When probate courts had jurisdiction to license the sale of real estate, the statute required the petition therefor to be presented to the probate court of the county in which administration was granted.

It was not the purpose of the legislature, in changing the section so as conform to the constitution, which conferred jurisdiction upon the district courts to grant such licenses, to change the county in which the application should be made, but it was obviously the intention of the law-makers that the petition should be filed and the proceedings should be recorded in the district court of the

county where letters of administration are granted.  This has been almost the universal construction placed upon the section by the bench and bar of the state, and the legislature in 1887 recognized the wisdom of such construction by amending said section 68, by inserting therein after the words "district court" the words "of the county," thereby making the meaning plain and removing all doubt.  If search for a reason why the legislature required the application for a license to sell real estate by an administrator or executor, should be made to the district court of the county in which administration was granted is permissible, it may be inferred from the fact that, that being the county in which the deceased resided at the time of his death, usually more of the heirs and creditors of the deceased, and others interested in the settlement of the estate, reside in that county than in any other county of the state.  There is no provision of statute which can possibly be construed to confer jurisdiction in such proceeding upon the district court of the county where the real estate which is sought to be sold is situated.  The administrator having received his appointment from the county court of Clay county, the district court of that county, or the judge thereof in vacation, had exclusive jurisdiction to license the sale of the real estate of the deceased, although the same was situated in another county, upon the filing of a proper petition in the district court of Clay county.  No such a petition has ever been filed therein, nor was any record of the proceedings had before Judge Weaver made in said court, but the same was made in the district court of Nuckolls county. There was no authority for this.  Where a district judge at chambers grants a license to an administrator or executor to sell real estate, the record of the proceedings must be made in the district court having jurisdiction to hear and determine the application.  This is manifest from a reading of the proviso clause of section 339 of chapter 23, Compiled Statutes, entitled "Decedents," which declares

"That in all cases where the judge shall order a sale of any real estate, while sitting at chambers, he shall make out in writing a copy of said order, and cause the same to be filed in the office of the clerk of the district court, and said clerk shall thereupon record said order, in the record book of said court, before any sale shall be made as aforesaid."

There can be no doubt when a petition, setting up the necessary facts for a license to sell lands for the payment of the debts of an estate, is filed in the district court having jurisdiction, which is acted upon by the judge therof in vacation and a license is granted, that mere errors or irregularities in the proceedings, when the essential requirements of the statute have been complied with, will not avoid the title of the purchaser when called in question collaterally. But the defects relied on in the case before us are not mere irregularities, but go to the jurisdiction. If the petition of the administrator for a license had not been filed, and the license and subsequent proceedings thereunder had never been recorded, in any district court of the state, we do not think it would be contended that the sale and administrator's deed were valid. The fact that the application for the license was filed and the proceedings were recorded in Nuckolls county, and that such county and Clay were in the same judicial district, cannot make any difference. The district courts of the two counties are as separate and distinct as if they were in different judicial districts and presided over by different judges. We think the essential requirements of the statute have not been observed. For the reasons stated the judgment of the district court is reversed and the case remanded.

REVERSED AND REMANDED.

POST, J., concurring.

I agree with the chief justice, that the jurisdiction of a district judge to order the sale of land of a deceased person

for the purpose of paying the debts of the estate, upon the petition of an administrator, is co-extensive with his district. The proceedings through which defendant herein claims title are not void, for the reason that the order of sale was made by the judge of the district in Richardson county. I am, however, unable to assent to the proposition that the recording of the proceedings in Nuckolls county instead of Clay county is a mere irregularity not affecting the merits of the controversy. To so characterize it is to assume the very proposition in controversy, viz., that the administrator was authorized to sell the real estate in question. I take it to be an elementary rule of evidence that judicial proceedings are proved by their records only, or, in the language of Mr. Greenleaf, a judgment is "the only proper and legal evidence of itself." (1 Gr. on Ev., 538.) In this case the authority of Hammond, the administrator, to sell the land must appear of record. It must be proved by a record which the law authorizes to be kept. The statute makes no provision for the recording of the proceedings in such cases in any county other than that in which the administrator may have been appointed. It is clear to me, from a careful examination of the legislation on the subject, that the provisions of our statutes will not bear any other construction. I do not understand, however, that there exists any difference of opinion between the members of the court upon that question. There being no authority for the record in this case elsewhere than in Clay county, it follows that the records of that county are the only legal evidence of the sale. (1 Gr. on Ev., 485.) It is not a sufficient answer to the objection to the record in this case, that Clay and Nuckolls counties were both in the same judicial district, since the district court of one county will not take notice of the records of the court of another county in the same district, nor is the jurisdiction of a district judge limited to property within his district. There is, perhaps, not a district judge of the state to-day who has

not upon the petition of administrators ordered the sale of real estate in other districts. The boundaries of the state are the only limitation upon the jurisdiction of the judges so far as the property is concerned. The law surely does not contemplate anything so unreasonable as that the record of a judicial proceeding should be kept in another, perhaps distant county, beyond the reach or control of the judge who made the order in question. A construction so illogical should be avoided if possible. It should be borne in mind that the one question distinctly raised by the pleadings and proofs in this case is that of the legal title. Mrs. Snyder, the party in interest, and who conducted the defense in the name of her tenant Royce, was satisfied to rest upon the title acquired through the administrator's sale, and offered no evidence tending to show equities on her part which should prevail as against the plaintiff, who is conceded to have the legal title, unless divested thereof by the sale and deed of the administrator. There is, aside from the records of the district court of Nuckolls county, no evidence that defendants paid any consideration for the land, or that she is subrogated to any equities of the purchaser at the administrator's sale. It is useless to speculate upon the effect of supposable equities as against the legal title. The record was, in my opinion, inadmissible, and there being no competent proof of title in defendant, the judgment is wrong and should be reversed.

MAXWELL, CH. J., dissenting.

This is an action of ejectment brought by the plaintiff against the defendant in the district court of Nuckolls county, to recover the possession of the northwest quarter of section 11, in township 4 north, range 8 west, of the 6th P. M., and for damages for withholding the possession. The defendant answered denying the plaintiff's title and alleging that the sale was made more than five years before the bringing of the suit. On the trial of the cause

the court directed the jury to return a verdict for the defendant, which was done, and judgment entered thereon, dismissing the action.    It appears from the record that James Stack, in his lifetime was, the owner of the land in controversy; that he died in the year 1879 in Clay county, leaving a will wherein the plaintiff, was named as executrix and sole legatee of all his property, subject to his debts.   The will was duly admitted to probate in Clay county, but afterwards the plaintiff, for some cause which does not appear and is not material, resigned and William H. Hammond was appointed administrator with the will annexed of said estate.    The debts secured by mortgage against the estate seem to have amounted to nearly $1,200, and the personal property was of less value than $300.    To satisfy these debts it was necessary to sell real estate, and the administrator presented the following petition to Judge Weaver, of the then first judicial district:

"In the District Court, First Judicial District, in and for Nuckolls County, Nebraska.    Before Hon. A. J. Weaver, Judge:

"PETITION OF WM. H. HAMMOND, ADMINISTRATOR OF THE ESTATE OF JAMES STACK, DECEASED, TO SELL REAL ESTATE TO PAY DEBTS.

"Comes now William H. Hammond, administrator as aforesaid, by Hayes & Steele, his solicitors, and represents to the honorable court that he was on the 2d day of February, 1880, duly appointed administrator of the estate of James Stack, deceased, by Hon. E. P. Bennett, county judge of Clay county; that the personal property which came to his hands as such administrator amounted to $287.29, and that the same has all been paid out and expended towards liquidating the just debts and demands existing against said estate, which said claims and demands

amounted in the gross to $1,187, as near as can be ascertained, and that there still exists demands and claims amounting to $900, as nearly as the same can be ascertained by your petitioner. Your petitioner further represents that said James Stack, deceased, died seized of the following real estate, to-wit: The northwest quarter of section 11, town 4 north, of range 8 west, of the 6th principal meridian, situated in said Nuckolls county. Your petitioner therefore prays that an order may be made allowing him to sell said real estate, or so much thereof as may be necessary, at private sale, and that the proceeds of said sale shall be appropriated to the liquidating of the claims, demands, and debts existing against said estate." This was duly signed and verified.

Judge Weaver thereupon made the following order:

"In the District Court, First Judicial District, Nuckolls County, Nebraska.

"IN THE MATTER OF THE APPLICATION OF WM. H. HAMMOND, ADMIN-ISTRATOR OF THE ESTATE OF JAMES STACK, DECEASED, TO SELL REAL ESTATE TO PAY DEBTS.

"Present, Hon. A. J. Weaver, judge.

"Upon reading the petition filed herein, and it appearing by the petition that there is not sufficient personal property or estate in the hands of said administrator to pay the debts of said estate of James Stack, deceased, and it appearing from the petition that it is necessary to sell the real estate described in the petition filed herein for the payment of said debts against said estate: Therefore, it is ordered that all persons interested in said estate appear before me at chambers, at my office in Falls City, Nebraska, on the 24th day of July, 1880, at 2 o'clock P. M., to show

cause why a license should not be granted as prayed to sell the N. W. ¼ sec. 11, T. 4, R. 8 W., situated in Nuckolls county, Nebraska, to pay debts against the estate of James Stack, deceased.    And it is further ordered that a copy of this notice be published for four successive weeks prior to the time fixed for said hearing, in the Nuckolls County *Herald*, published in Nuckolls county, Nebraska.

"A. J. WEAVER.

"Clay Center, May 17, 1880."

It will be observed that this order was made at the county seat of Clay county.    The order was duly published four successive weeks.    At the time set for the hearing a license was granted as follows:

"IN THE MATTER OF THE APPLICATION OF WILL-IAM H. HAMMOND, AD-MINISTRATOR OF THE ESTATE OF JAMES STACK, DECEASED, TO SELL REAL ESTATE TO PAY DEBTS AGAINST SAID ESTATE.

"LICENSE.

"And now on this 24th day of July, 1880, this cause coming on to be heard at chambers, at the time and place fixed in open court, and in pursuance of the notice filed herein, and being fully advised in the premises, I find there has been lawful service by publication of the notice heretofore ordered to be given of the time and place for hearing of the application for license to sell real estate to pay debts against the estate of said James Stack, deceased, and having fully examined the petition and the allegations and the proofs of the parties interested, and no one appearing to show cause why license should not be granted as prayed, and being satisfied that it is necessary to sell the real estate described in the petition to pay debts against the estate of said James Stack, deceased: Therefore, it is ordered

57

that the said William H. Hammond, administrator of the estate of said James Stack, deceased, be, and he is hereby, authorized and licensed to sell the following real estate to pay debts against the estate of James Stack, deceased, to-wit: The northwest quarter of section number 11, town 4 north, in range 8 west of the 6th P. M., situated in Nuckolls county, Nebraska. Said administrator, before making said sale, is required to take the oath as prescribed by law and to execute a bond, to be approved by the clerk of the district court in and for Nuckolls county, in the sum of $1,000, and he is hereby ordered to make return of his doings under this license to the district court of Nuckolls county within one year of the date hereof.

"The clerk of the district court in and for Nuckolls county is ordered to copy this license in his journal, file the original in his office, and furnish the administrator a certified copy of the same, and the clerk is further ordered, upon the execution and approval of the bond ordered to be given him, to file the same in his office and copy the same upon the proper record.          A. J. WEAVER."

"*Judge of the District Court, First Judicial District of Nebraska.*"

The administrator thereupon gave a bond, which was retained by the clerk and thereby duly approved, and took the oath required by statute, and after due advertisement sold said land to S. C. Colverd for the sum of $605, subject to the interest of P. M. Colverd of $655. The report of this sale is in due form and is accompanied by the oath of two reputable persons that the price is not disproportionate to the value of the land. The report was duly presented to the district court of Nuckolls county, and an order made confirming the same, as follows:

" In the District Court in and for Nuckolls County, Nebraska.

" IN THE MATTER OF THE SALE ⎫
   OF REAL ESTATE BY WILL- ⎪
   IAM H. HAMMOND, ADMINIS- ⎬
   TRATOR OF ESTATE OF JAMES ⎪
   STACK, DECEASED. ⎭

             " Journal entry, November 8, 1881.

" Now on the 8th day of November, A. D. 1881, being the second day of said court, came this cause on for hearing, and on motion of said William H. Hammond, by John D. Hayes and W. A. Bergstresser, his attorneys, and on producing the return and report of the said administrator of a sale of real estate made by him on the 18th of September, 1880 to Mary A. Colverd on an order of sale issued by this honorable district court in this cause on the 24th day of July, A. D. 1880, ordering the sale of the N. W. ¼ of section 11, township 4 north, of range 8 west, of the 6th P. M., and the court, on examination of said proceedings, being the said return and report, being satisfied that said sale has been made in all respects in conformity to the law and the previous order of this court, it is ordered that the said sale and proceedings be, and the same is hereby, confirmed, and the said administrator is ordered to make to said purchaser a deed for the lands and tenements so sold."

A deed was thereupon made by said administrator in due form, under which the defendants claim title.

The principal contentions of the plaintiffs is that the proceedings having been conducted in Nuckolls county where the land is situated while the administrator was appointed by the probate court of Clay county, that therefore the proceedings are void and no title passed by the deed. It is necessary therefore to examine the statutes authorizing such sales. In consequence of certain irregularities which were brought to the attention of the legislature in 1866, the power to decree sales of real estate was taken

away from the probate courts by section 4, article 4, of the
constitution of 1867, which is as follows: "The juris-
diction of the several courts herein provided for, both
appellate and original, shall be fixed by law; *Provided,*
That probate courts, justices of the peace, or any inferior
court that may be established by the legislature shall not
have jurisdiction in any matter wherein the title or boun-
daries of land may be in dispute, nor shall either of the
courts mentioned in this proviso have the power to order
or decree the sale or partition of real estate; *And provided
further,* That justices of the peace, and such inferior courts
as may be established by the legislature, shall not have ju-
risdiction when the debt or sum claimed shall exceed $100,
and the jurisdiction of the district or probate courts, and
justices of the peace, shall be uniform throughout the
state."

In the constitution of 1875 the provision is as follows:
"County courts shall be courts of record and shall have
original jurisdiction in all matters of probate, settlements of
estates of deceased persons, appointment of guardians, and
settlements of their accounts, in all matters relating to ap-
prentices, and such other jurisdiction as may be given by
general law. But they shall not have jurisdiction in crim-
inal cases, in which the punishment may exceed six months
imprisonment, or a fine of over $500, nor in actions in
which title to real estate is sought to be recovered, or may
be drawn in question, nor in actions on mortgages or con-
tracts for the conveyance of real estate, nor in civil actions
where the debt or sum claimed shall exceed $1,000." Sec-
tion 23 of the same article provides that "The several
judges of the court of record shall have such jurisdiction
at chambers as may be provided by law."

Our present law in relation to decedents was passed and
in existence before the state was admitted into the Union,
hence some of the peculiar phraseology of that law has
never been changed to conform to the change in the tribu-

nals to authorize the granting of licenses to sell real estate. Thus in section 68 the administrator is required to present a petition to the district court of the county in which he was appointed, etc. Thus in section 68 of the Revised Statutes of 1886 the word "probate" being changed to "district" before the word "court." The original section is as follows: "In order to obtain such license, the executor or administrator shall present a petition to the probate court from which he received his appointment, setting forth the amount of personal estate that has come to his hands and how much thereof, if any, remains undisposed of; the debts outstanding against the deceased, so far as the same can be ascertained; a description of all the real estate of which the testator or intestate died seized, and the condition and value of the respective portions or lots, which petition shall be verified by the oath of the party presenting the same." A change was made in this section in 1887, so that it now reads as follows: "In order to obtain such license, the executor or administrator shall present a petition to the district court of the county in which he was appointed, setting forth the amount of personal and real estate that has come to his hands and how much thereof, if any, remains undisposed of; the debts outstanding against the deceased, so far as the same can be ascertained; a description of all the real estate of which the testor or intestate died seized, and the condition and value of the respective portion or lots, which petition shall be verified by the oath of the party presenting the same."

The words "of the county" were added by the last change, so that the section now reads, the "administrator shall present a petition to the district court of the county in which he was appointed." The plaintiff's argument is based almost wholly upon these words, apparently ignoring the fact that they were not in the statute when this sale took place in 1880. Section 339 of chapter 17, General Statutes, which was in force when this sale took place,

is as follows: "The judge of the district court of the state may, upon the application of an executor, administrator, or guardian to sell or dispose of the real estate of decedents, spendthrifts, or minors, hear and determine the same at chambers in vacation; *Provided,* That in all cases where the judge shall order a sale of any real estate, while sitting at chambers, he shall make out, in writing, a copy of said order, and cause the same to be filed in the office of the clerk of said court, and said clerk shall thereupon record said order, in the record book of said court, before any sale shall be made as aforesaid."

On page 10 of the plaintiff's brief it is said that the clerk shall enter the same in the record book of the *county,* etc., which is a clear mistake. It will not be seriously contended that if the court or judge had jurisdiction to make the orders in the premises that the failure of the clerk to enter the order before a sale took place would render all subsequent proceedings void, particularly if no one had suffered by the wrong. But the question may arise, what county is referred to? Since the amendment of 1887, that question is set at rest, but prior to that time there was room for doubt. It is true section 68 provides for the presentation of a petition to the judge of the court of the county in which the administrator was appointed. This, under the territorial law above referred to, was necessary, as the probate judge would have no jurisdiction outside of his own county. The constitution, however, by conferring this power on the judge of the district court, gave the authority to judges and tribunals which have general jurisdiction in each county in the district; and, therefore, the power in that regard is much broader than under the territorial law. This principle is recognized in *Seymour v. Ricketts,* 21 Neb., 240, where a license to sell real estate issued by a judge of the first judicial district included lands in the second district, and the sale was held not subject to collateral attack and was sustained. A judge has jurisdiction over his en-

tire district.   His power is as broad in that regard in respect to matters over which he has jurisdiction as that of a county judge within his county.   He is liable to err, but if he has jurisdiction, such errors will not render the proceedings void.   Therefore, where a petition is properly presented to him setting forth the necessity of a sale, and he causes a notice thereof to be published for the requisite length of time, and thereafter issues a license under which a sale of real estate of the decedent takes place, the sale will not be void unless there is fraud.

The plaintiff in error lays considerable stress upon the words "district court," and it is said that a district judge is not a district court.   In section 69, chapter 23, Compiled Statutes, it is said "the judge of the district court shall thereupon make an order."   In section 72 of the same chapter it is provided that "the judge of the district court shall proceed to the hearing of said petition."   In section 79 it is provided that "if the judge of the district court shall be satisfied, after a full hearing upon the petition, etc., * * * that a sale of the whole or some portion of the real estate is necessary for the payment of valid claims against the deceased * * * he shall thereupon make an order," etc.   Section 80 requires the judge to specify the land to be sold, and authorizes him to direct the order in which they shall be sold.   Section 87 is as follows:

"The executor or administrator making any sale shall immediately make a return of his proceedings upon the order of sale in pursuance of which it is made, to the judge of the district court granting the same, who shall examine the proceedings, and may also examine such executor or administrator, or any other person, on oath, touching the same; and if he shall be of opinion that the proceedings were unfair, or that the sum bid is disproportionate to the value, and that a sum exceeding such bid, at least ten per cent, exclusive of the expenses of a new sale, may be obtained, he shall vacate such sale and direct another to be

had, of which notice shall be given; and the sale shall be, in all respects, as if no previous sale had taken place.

"Sec. 88. If it shall appear to the district judge that the sale was legally made and fairly conducted, and that the sum bid was not disproportionate to the value of the property sold, or if disproportionate, that a greater sum than above specified cannot be obtained, he shall make an order confirming such sale and directing conveyances to be executed."

It will thus be seen that the judge of the district court may make any of the orders named. It is true the word "court" appears in some of the sections of the decedent law, but it will be found in every instance that that word existed in the territorial law and has not been changed; in other words, applied originally to the probate court and not to the district court; and, as is well known, the probate court consisted of the probate judge alone, and was always open for the transaction of business, except on Sundays and legal holidays, the same rule, no doubt, is applicable to the judges of the district court in relation to selling real estate for the payment of debts owing by an estate. This question is discussed in *Stewart v. Daggy*, 13 Neb., 290, and what is said there need not be repeated here. It is very clear to my mind, therefore, that where a petition stating the necessary facts is presented to a judge of the district court within his district for the sale of real estate to pay debts against the estate, that he thereby acquires jurisdiction of the case, and if he, in good faith, follows the directions of the statute, although he may err therein, his orders and judgment, although erroneous and liable to be reversed in a direct proceeding, are not void, and a sale wherein the forms of the law have, in good faith, been complied with, is not void, although in a proper proceeding it may be voidable. Here, while the statute as it existed prior to 1887 is not entirely clear as to the county in which the record should be made, yet it is probable it should have

been in the county where the administrator was appointed.
The failure to do this, however, did not render the pro-
ceedings void.    The land was sold by the representative of
the estate and the money derived from said sale used to
pay the debts owing by said estate.    If there was any de-
fect in the proceedings the purchaser was not to blame
therefor and he should not suffer for such neglect.    Had
the plaintiff sought to redeem the land by offering to pay
the full amount of purchase money, interest, and taxes, and
stated any additional ground therefor, as that the land was
sold for a grossly inadequate price, she would have appeared
to much better advantage.    It is evident to my mind that
there is no error in the record, and the judgment in my
view should be affirmed.