SUSAN B. MYERS ET AL. V. ALEXANDER McGAVOCK ET AL.

FILED MARCH 22, 1894.   No. 5059.

1. **Guardian and Ward:** SALE OF MINORS' LAND: VALIDITY OF PROCEEDINGS: COLLATERAL ATTACK: RES ADJUDICATA. A sale and conveyance of the real estate of certain minors, made by their guardian in pursuance of a license of a district court of this state granted therefor, examined, and *held*, that such sale and conveyance would not be held void in this, a collateral proceeding, because (1) it appears that at the time such guardian made application to the district court for a license to sell the real estate of his wards they resided in the state of Illinois, and the guardian held his appointment from a court in the state of

Iowa, it appearing that at the time said guardian was appointed
by the Iowa court his wards resided in that state; nor because
(2) said wards took up their residence in the state of Illinois
after the appointment of their guardian in the state of Iowa, as
their change of domicile did not deprive said guardian of control
over them or their property; nor did the residence of said wards
in the state of Illinois, at the time the guardian made the ap-
plication to sell, preclude the jurisdiction of the district court;
nor because (3) the authenticated copy of the letters of guard-
ianship, filed in said district court, did not contain the certificate
of a judge or presiding magistrate of the Iowa court that the
certificate and attestation of the clerk of the Iowa court, at-
tached to said copy of letters of guardianship, was in due form
of law; as the question whether the certified copy of the guard-
ian's appointment was the best evidence, or competent evidence,
was one for the district court hearing the application for license,
and it was for that court to say whether it was satisfied with the
evidence offered to prove that the guardian was the duly ap-
pointed, qualified, and acting guardian of the heirs whose real
estate he had made application to sell; and the finding and
judgment of a court cannot be successfully assailed as void, in a
collateral proceeding, because such court made such finding or ren-
dered such judgment on incompetent evidence (*Menage v. Jones*,
40 Minn., 254, followed); nor because (4) the petition for license
to sell the real estate was not verified by the guardian, as this
did not affect the jurisdiction of the district court, nor render
its proceedings void; nor because (5) the verification of the peti-
tion for license was made by the guardian's attorney who con-
ducted the proceedings (*Ellsworth v. Hall*, 48 Mich., 407, fol-
lowed); nor because (6) the bond given by the guardian to the
judge of the district court was not formally approved by him
(*Emery v. Vroman*, 19 Wis., 724, and *Pursley v. Hayes*, 22 Ia., 11,
followed); nor because (7) the record of the proceedings on which
the guardian's sale was based contained no copy of a notice of
the sale posted in three of the most public places in the county
in which said sale was held, as the district court which licensed
the sale, in its order confirming the same, made a finding that
the proceedings of the guardian in making the sale had been in
all respects regular and in conformity to law, and this court
would presume that the district court had before it sufficient
evidence on which to base such finding; nor because (8) the sale
was not made by the guardian personally, but through his at-
torney who conducted the proceedings in court; nor because (9)
the property sold and conveyed by the guardian was described
as "the N. E. two-thirds ($\frac{2}{3}$) of lot eight (8) in block two hun-

dred and three (203), in the city of Omaha, being all that por-
tion of said lot not belonging to the Union Pacific Railway
Company," as this description was sufficient to enable the
property to be identified, and therefore not void for uncertainty.

2. **Ejectment:** EVIDENCE. In an ejectment suit, where the defend-
ant claims title by virtue of a guardian's sale and conveyance,
the fact of the approval of the bond by the judge of the court
granting the guardian a license to sell, like any other fact, may
be proved by the best evidence attainable.

3. **Guardian and Ward:** POWER OF GUARDIAN: COURTS. The
authority of a guardian to sell the real estate of his wards for
any purpose must be found in the statute, and our laws confer
no authority on a natural guardian, as such, to dispose of the
real estate of his wards; and no district court has jurisdiction to
authorize a natural guardian, as such, to sell the real estate of
his wards. The only guardian a district court has jurisdiction
to license to sell the property of his wards is a guardian ap-
pointed and commissioned by a court having authority to ap-
point guardians; and it must appear that such guardian had
accepted such appointment, had qualified, and was acting.

4. **A natural guardian may become the legal guardian**
of his wards, but in order to become such he must be appointed
by the proper authority, accept such appointment, and qualify
as such legal guardian.

5. **An application by a guardian for license to sell the
real estate of his wards** for their maintenance and educa-
tion is a proceeding *in rem*,—one instituted by their guardian
for their benefit. It is, in effect, the application of the wards.
It is not a proceeding adversary to them; and notice to them of
such application is not essential to the jurisdiction of the dis-
trict court to grant the license. *Mohr v. Manierre*, 101 U. S.,
417; *Scarf v. Aldrich*, 32 Pac. Rep. [Cal.], 324; *Mohr v. Porter*,
51 Wis., 487, followed.

6. **Guardians:** BONDS: DUTY OF COURTS. The statutes of this
state require courts having authority to appoint guardians to
see to it that the persons so appointed are capable and honest;
that they give and keep good the bonds required by the statute
for the faithful execution of their trust; and render to the
court, at frequent intervals, accounts of their guardianship.

7. **Sale of Ward's Land:** LICENSE: DISTRICT COURTS. The law
has conferred on the district judges in the first instance the ex-
clusive power to say whether the facts exist which justify the
sale of a ward's property by his guardian; to say whether, in the

judgment of the court, the sale asked to be authorized is for the best interests of the ward; and this authority should not be exercised by the district judges as a matter of course, but only after investigation and inquiry into all the facts, and not then unless the judge is convinced that such sale is a necessity or is for the best interests of the ward.

8. ———: NOTICE TO WARD. It seems that notice to the wards of an application made by their guardian for the sale of their real estate to pay debts is essential to the jurisdiction of the district court to license such sale; and that a guardian's sale and conveyance of the real estate of his wards for such purpose without such notice is void. (*Mickel v. Hicks*, 19 Kan., 578.)

9. ———: NOTICE. The provisions of section 109, chapter 23, Compiled Statutes, 1893, are not applicable to a proceeding instituted by a guardian of minors for a license to sell their real estate for their education and maintenance. The meaning of said section is that when any person other than the minors—such as an insane person, an idiot, a spendthrift, or a drunkard—shall be under guardianship, and an application shall be made by such person's conservator or guardian for license to sell his real estate, then the heirs presumptive, that is, all such persons as would inherit such person's property, should he die immediately, shall be deemed interested in the estate, and notice of the application shall be served upon them.

10. ———: APPLICATION FOR LICENSE: APPEARANCES. Where an application was made by a guardian of minors to sell their real estate and the mother and an adult brother of such minors entered their appearance in said proceeding and consented that the license to make such sale might be granted as prayed, *held*, that the interest of said widow and adult son in said real estate was not therefore divested by the sale and conveyance of the real estate made by said guardian in virtue of said proceeding.

11. ———: PURCHASERS: ADVERSE POSSESSION: LIMITATION OF ACTIONS. But where such proceedings purported to dispose of the interest of the adult parties and the purchaser entered into exclusive possession, such proceedings and entry operated as an ouster of such adults, and such possession being adverse and continuing for the statutory period divested the adults' title.

12. A conveyance of real estate made to a railway corporation chartered by an act of congress, which, under our constitution, is incompetent to take title, is not void, but only voidable. The title of such corporation to such real estate is valid against every one but the state, and can be divested only

in proceedings brought by the state for that purpose. *Carlow v. Aultman*, 28 Neb., 672, followed.

13. Corporations: ADVERSE POSSESSION: TITLE. Where a corporation, chartered by an act of congress, and incompetent by reason of our constitution to acquire title to real estate in this state, has been in open, notorious, exclusive, and adverse possession of real estate under a claim of title for ten years, such corporation has a valid title to such real estate, as against all persons, except the state of Nebraska.

14. Statute of Limitations: CORPORATIONS. Where the statute of limitations has begun to run against the owners of real estate in the adverse possession of another, a conveyance and delivery of possession of such real estate by such adverse occupier thereof to one incompetent to take title to such real estate will not arrest the running of the statute of limitations against such owners.

15. Statutes: CONSTRUCTION. The rule that the legislature, by adopting the statute of another state, thereby adopts the construction placed on said statute by the highest court of that state, does not apply when such construction was not placed on said statute until after its adoption.

16. Railroad Companies. The provisions of chapter 16, Compiled Statutes, 1893, in so far as they are applicable, apply to all railroad corporations operating roads in this state, whether domestic or foreign corporations.

17. Railroad Companies: EASEMENTS: VALIDITY OF SETTLEMENT WITH GUARDIAN. In 1871 the Union Pacific Railway Company, a corporation chartered by act of congress, was operating its railroad in this state, and acquired the right to occupy, for depot purposes, certain real estate, the property of minor heirs, by making settlement with, and receiving a release and discharge from, the legal guardian of said minors for the damages sustained by them by reason of said occupation of their real estate. *Held*, That neither the constitution, nor any law in force at that time, prohibited such corporation from building and operating its road in this state, and that such settlement made with said guardian and release and discharge executed by him in pursuance of said settlement were valid, and vested in said corporation a perpetual easement in said real estate.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.

The facts are stated in the opinion.

*Guy R. C. Read* and *William D. Beckett,* for plaintiffs in error:

The statute of limitations had not run against the action. (*State v. Scott,* 22 Neb., 628; *Trester v. Missouri P. R. Co.,* 23 Neb., 242; *Koenig v. Chicago, B. & Q. R. Co.,* 27 Neb., 699; *Parker v. Starr,* 21 Neb., 680; *McCann v. McLennan,* 2 Neb., 289; *People v. Gosper,* 3 Neb., 310; *Albertson v. State,* 9 Neb., 437; Angell, Limitations; secs. 204, 246; *Murray v. Baker,* 3 Wheat. [U. S.], 541, *Ruggles v. Keelér,* 3 Johns. [N. Y.], 264; *Erskine v. Messicar,* 27 Mich., 84.)

The guardian who made the sale was not the guardian of the persons of the minors, but only for their property in the state of Iowa, and he was not authorized to make an application to sell their property in this state. The guardian's sale and deed were void. (Secs. 58, 110, ch. 17, Gen. Stats., 1873; Freeman, Void Judical Sales, sec. 10; *Bell v. Love,* 72 Ga., 125; *Dooley v. Bell,* 13 S. E. Rep. [Ga.], 284; *Pryor v. Downey,* 50 Cal., 388; *Pryor v. Madigan,* 51 Cal., 178; *Paty v. Smith,* 50 Cal., 153; *Roche v. Waters,* 72 Md., 264; *Frederick v. Pacquette,* 19 Wis., 541; *Chase v. Ross,* 36 Wis., 267; *Trester v. Missouri P. R. Co.,* 23 Neb., 242.)

The sale and deed are void because no notice of the application for license to sell was given to the wards either personally or by publication or in any other manner. (*Sitzman v. Pacquette,* 13 Wis., 325; *Frederick v. Pacquette,* 19 Wis., 569; *Blackman v. Bauman,* 22 Wis., 611; *Mohr v. Tulip,* 40 Wis., 66; *Mickel v. Hicks,* 19 Kan., 578; *Chicago, K. & N. R. Co. v. Cook,* 43 Kan., 83; *Bloom v. Burdick,* 1 Hill [N. Y.], 130; *Schneider v. McFarland,* 2 N. Y., 459; *Havens v. Sherman,* 42 Barb. [N. Y.], 636; *Stilwell v. Swarthout,* 81 N. Y., 109; *Pinckney v. Smith,* 26

Hun [N. Y.], 524; *Jenkins v. Young*, 35 Hun [N. Y.], 569; *Perry v. Adams*, 98 N. Car., 167; *Harrison v. Harrison*, 106 N. Car., 282; *Stancill v. Gay*, 92 N. Car., 462; *Taylor v. Walker*, 1 Heisk. [Tenn.], 734; *Frazier v. Pankey*, 1 Swan [Tenn.], 75; *Wheatley v. Harvey*, 1 Swan [Tenn.], 484; *Winston v. McLendon*, 43 Miss., 254; *Root v. McFerrin*, 37 Miss., 17; *Planters Bank v. Johnson*, 7 S. & M. [Miss.], 449; *Gwin v. McCarroll*, 1 S. & M. [Miss.], 351; *Smith v. Denson*, 2 S. & M. [Miss.], 326; *Donlin v. Hettinger*, 57 Ill., 348; *Tell v. Young*, 63 Ill., 106; *Marshall v. Rose*, 86 Ill., 374; *Babbitt v. Doe*, 4 Ind., 355; *Doe v. Anderson*, 5 Ind., 33; *Guy v. Pierson*, 21 Ind., 21; *Doe v. Bowen*, 8 Ind., 197; *Good v. Norley*, 28 Ia., 188; *Fiske v. Kellogg*, 3 Ore., 503.)

A sale by guardian without notice to ward is void where statute requires all persons interested residing in the state to be cited when such application is made. (*Rule v. Broach*, 58 Miss., 552; *Hamilton v. Lockhart*, 41 Miss., 460; *Lyon v. Vanatta*, 35 Ia., 521; *Boyles v. Boyles*, 37 Ia., 592; *Arrowsmith v. Harmoning*, 42 O St., 254; *Perry v. Brainard*, 11 O., 442; *Mauarr v. Parrish*, 26 O. St., 636; *Musgrave v. Conover*, 85 Ill., 374.)

Guardians' sale of real estate, without first giving bond required, is void. (*Sparhawk v. Buell*, 9 Vt., 41; *Stewart v. Bailey*, 28 Mich., 251; *Ryder v. Flanders*, 30 Mich., 336.)

On application to a court of equity for the support of a minor out of his separate estate, minors are always parties. (*Tompkins v. Tompkins*, 18 N. J. Eq., 303; *Stephens v. Howard*, 32 N. J. Eq., 244.)

A decided majority of the authorities is in favor of the position that notice to the minor whose real estate is to be sold is jurisdictional. (Freeman, Void Judicial Sales, sec. 16; Rorer, Judicial Sales, secs. 69–71.)

It has been the practice in Nebraska to give notice of some sort to the wards in cases of this kind. (*Trumbull v.*

*Williams*, 18 Neb., 144; *McClay v. Foxworthy*, 18 Neb., 295.)

The guardian's sale was void, because a bond was required by the court to be given as a condition precedent to the sale, in accordance with the provisions of section 61 of chapter 23, Compiled Statutes, and no such bond was given. (*McClay v. Foxworthy*, 18 Neb., 297; *McKeever v. Ball*, 71 Ind., 398.)

The receipt of money, from illegal sale, by heirs after becoming of age, does not estop them from disputing its validity. Their attention must be called specially to the point. (*Harmon v. Smith*, 38 Fed. Rep., 482; *Schnell v. City of Chicago*, 38 Ill., 382; *Messinger v. Kintner*, 4 Binn. [Pa.], 97; *Good v. Norley*, 28 Ia., 188; *Brant v. Virginia Coal & Iron Co.*, 93 U. S., 326; *Crest v. Jack*, 3 Watts [Pa.], 240; *Knouff v. Thompson*, 4 Harris [Pa.], 361; *Mohr v. Tulip*, 40 Wis., 66, 79; *Whyte v. City of Salem*, 4 Saw. [U. S. C. C.], 88; *Whyte v. Smith*, 4 Saw. [U. S. C. C.], 17; *Hill v. Ep'ey*, 31 Pa. St., 331; *Boggs v. Merced Mining Co.*, 14 Cal., 367; *Carpentier v. Thirston*, 24 Cal., 268; *Davis v. Davis*, 26 Cal., 38; *Fields v. Squires*, Deady [U. S. C. C.], 396; *Ryders v. Flanders*, 30 Mich., 336; *Stancill v. Gay*, 92 N. Car., 462; *Campbell v. Nesbitt*, 7 Neb., 300.)

In much stronger cases than this the courts have refused to apply the doctrine of estoppel so as to prevent the recovery of property by an heir or ward against one who holds a void administrator's or guardian's deed for it. (*Mohr v. Tulip*, 40 Wis., 66, 79; *Messinger v. Kintner*, 4 Binn. [Pa.], 97; *Good v. Norley*, 28 Ia., 188.)

*Francis A. Brogan*, for defendant in error McGavock:

The defendants McGavock and Hobbie had acquired a perfect title by prescription at the commencement of this action in ejectment, and the statute of limitations had run and was a complete bar to the action of the plaintiffs.

(*State v. Babcock*, 21 Neb., 602; *White v. Blum*, 4 Neb., 562; *State v. Silver*, 9 Neb., 89; *Green v. Sanford*, 34 Neb., 363; *Tyrrill v. Lamb*, 96 Pa. St. 464; *Van De Haar v. Van Domseller*, 56 Ia., 671; *Quimby v. Claflin*, 27 Hun [N. Y.], 611; *Western Union Telegraph Co. v. Way*, 83 Ala., 542; *Alabama Great Southern R. Co. v. Smith*, 81 Ala., 229; *Ely v. Early*, 94 N. Car., 1; *Bigham v. Talbot*, 63 Tex., 271; *Harral v. Gray*, 10 Neb., 187; *Fraedrich v. Flieth*, 64 Wis., 184.)

The first point urged is that the application should have been made by the guardian of the persons of the minors, instead of by the guardian of their property.    There is no foundation for this either in reason, or in the terms of the statute, or in any adjudicated case.    On the contrary the statute expressly says that it is the guardian who has been appointed, who should apply for leave to make the sale, and this has been uniformly held to mean the guardian of the property, not the guardian of the person or the natural guardian. (*Perry v. Carmichael*, 95 Ill., 519; *Fonda v. Van Horme*, 15 Wend. [N. Y.], 631; *Porter v. Tudor*, 9 Conn., 416; *Otto v. Schlapkahl*, 57 Ia., 226; *Shanks v. Seamonds*, 24 Ia., 131; *Deugenhart v. Cracraft*, 36 O. St., 549.)

The foreign court is presumed to have acted correctly in appointing a guardian. (*Taylor v. Kilgore*, 33 Ala., 214.)

A guardian of the property may remove his wards from one state to another without losing his relation to them, if the change is for the benefit of the wards, and is done with the consent of the surviving parent. (*Pedan v. Robb*, 8 O., 227; *Wheeler v. Hollis*, 19 Tex., 522; *Townsend v. Kendall*, 4 Minn., 412.)

The court hearing the application must determine whether a proper, authenticated copy of letters of guardianship from a foreign state has been presented to it, and its determination is final unless appealed from.    It cannot be inquired into collaterally. (*Menage v. Jones*, 40 Minn., 254.)

This court has held that it will not reverse a judgment for failure to verify the petition upon a direct proceeding in error. (*Fritz v. Barnes*, 6 Neb., 435; *Hershiser v. Delone*, 24 Neb., 380; *Johnson v. Jones*, 2 Neb., 126.)

The same rule has been expressly held to apply to the verification by a guardian of the petition for license to sell real estate. (*Hamiel v. Donnelly*, 75 Ia., 93; *Ellsworth v. Hall*, 48 Mich., 407.)

The failure by an administrator to verify the petition under section 68 of chapter 23, Compiled Statutes, if it is a defect at all, does not affect the jurisdiction of the court, and cannot be attacked in a collateral proceeding. (*Trumble v. Williams*, 18 Neb., 144.)

A failure to formally approve the bond would not be fatal. (*Emery v. Vroman*, 19 Wis., 689*; *Pursley v. Hayes*, 22 Ia., 11; *Hamiel v. Donnelly*, 75 Ia., 93.)

A failure to give the bond would not be fatal. (*Watts v. Cook*, 24 Kan., 278.)

When special statutory powers are conferred upon courts of general jurisdiction, or upon the judges thereof, and such powers are exercised judicially, that is, according to the course of common law and proceedings in chancery, their judgments cannot be attacked or impeached collaterally, and they are conclusively presumed to have the jurisdiction which they exercise. (*Pulaski County v. Stewart*, 28 Gratt. [Va.], 872; *Mills v. Paynter*, 1 Neb., 445; *Miller v. Finn*, 1 Neb., 289; *State v. Buffalo County*, 6 Neb., 461; *Jennings v. Simpson*, 12 Neb., 565; *Bryant v. Estabrook*, 16 Neb., 217; *Gould v. Loughran*, 19 Neb., 394; *McCormick v. Paddock*, 20 Neb., 489; *Deseret Nat. Bank v. Nuckolls*, 30 Neb., 768; *Menage v. Jones*, 40 Minn., 254; *West Duluth Land Co. v. Kurtz*, 45 Minn., 380.)

Notice to the heirs is not of the essence of the court's jurisdiction. (*Grignon v. Astor*, 2 How. [U. S.], 319; *Seward v. Didier*, 16 Neb., 62; *Smith v. Race*, 27 Ill., 287; *Mason v. Wait*, 4 Scam. [Ill.], 127; *Mohr v. Porter*,

51 Wis., 487; *Trumble v. Williams*, 18 Neb., 154; *Miller v. Sullivan*, 4 Dillon [U. S. C. C.], 343; *Good v. Norley*, 28 Ia., 188; *Seward v. Didier*, 16 Neb., 58; *Gager v. Henry*, 5 Saw. [U. S. C. C.], 237.)

In the following cases it has been held that the court acquires jurisdiction to order the sale of a ward's property upon the filing of a proper petition by the proper person, and that the decree of the court ordering the sale is binding and conclusive, notwithstanding any irregularities in the proceedings: *Shaw v. Ritchie*, 136 U. S., 519; *Schaale v. Wasey*, 70 Mich., 414; *West Duluth Land Co. v. Kurtz*, 45 Minn., 380; *Menage v. Jones*, 40 Minn., 254; *Arrowsmith v. Gleason*, 46 Fed. Rep., 256; *Fitch v. Miller*, 20 Cal., 352; *Shelby v. Harrison*, 84 Ky., 144; *Butler v. Stephens*, 77 Tex., 599; *Mulford v. Beveridge*, 78 Ill., 455; *Mulford v. Stalzenback*, 46 Ill., 303; *Marquis v. Davis*, 113 Ind., 219; *Thompson v. Tolmie*, 2 Pet. [U. S.], 157; *Dexter v. Cranston*, 41 Mich., 448; *Pfirman v. Wattles*, 49 N. W. Rep. [Mich.], 40; *Williams v. Williams*, 18 Ind., 345; *Spring v. Kane*, 86 Ill., 580; *Benefield v. Albert*, 132 Ill., 665; *Palmer v. Oakley*, 2 Doug. [Mich.], 448.

The settlement between the guardian and ward after coming of age is binding and conclusive, and cannot be attacked collaterally, and must prevail as between the parties, unless impeached by a direct proceeding. (*Candy v. Hanmore*, 76 Ind., 125; *King v. King*, 40 Ia., 120; *Lynch v. Rotan*, 39 Ill., 14; *Brodrib v. Brodrib*, 56 Cal., 563.)

When a ward accepts the proceeds of a sale of real estate made by the guardian with apparent legal authority, he thereby ratifies the sale and makes the acts of the guardian his own. (*Seward v. Didier*, 16 Neb., 58; *Parmele v. McGinty*, 52 Miss., 475; *Handy v. Noonan*, 51 Miss., 166; *Hatcher v. Briggs*, 6 Ore., 31; *Brazee v. Schofield*, 2 Wash. Ter., 209; *Brazee v. Schofield*, 124 U. S., 495.)

*John M. Thurston* and *W. R. Kelly*, for defendant in error Union Pacific Railway Company.

*Montgomery, Charlton & Hall*, for defendants Hobbie.

RAGAN, C.

This is a suit in ejectment brought by Susan B. Myers, Sarah E. Myers, Luella G. Myers, Fannie B. Myers, and Stephen B. Myers against Alexander McGavock and wife, Henry C. Hobbie, and C. E. Hobbie, his wife, Helen C. Hobbie and her husband, and the Union Pacific Railway Company to recover possession of an undivided three-fourths interest in and to lot 8, block 203, in the city of Omaha. At the close of the evidence the jury, in obedience to an instruction of the court to that effect, returned a verdict in favor of the defendants. The court having refused to set this aside, and having rendered judgment thereon, the plaintiffs below bring the case here on error. All parties claim title under one Henry B. Myers, who died seized of the premises June 14, 1864. The plaintiffs in error claim as his widow and heirs. The defendant in error Alexander McGavock claims a portion of the premises by virtue of a sale and conveyance thereof to him, made by the guardian of the minor heirs of Henry B. Myers. The Hobbies hold under a conveyance from McGavock, and their claim will not be further noticed. The Union Pacific Railway Company holds possession of a portion of the lot occupied by it by virtue of a conveyance from McGavock, and holds possession of the remainder of such portion of said lot as it occupies by virtue of an appropriation thereof for railroad purposes on May 15, 1871, and a settlement then made with the guardian of the minor heirs of said Henry B. Myers for all damages accruing to said minors by reason of said appropriation of said portion of said lot.

We will first dispose of the case so far as the defendant in error Alexander McGavock is concerned. The point relied upon by the able and industrious counsel for plaintiffs in error to defeat McGavock's title is, that the guardian's deed, by virtue of which he claims, and the proceedings and sale on which said deed is based were and are void. Philip Myers, on the 8th of November, 1864, was, by the county court of Mahaska county, Iowa, appointed guardian for the minor children of Henry B. Myers, deceased, who, it appears, died intestate shortly before that time in said county. Philip Myers accepted said appointment and duly qualified as such guardian. On the 13th day of June, 1874, he filed a petition in the district court of Douglas county setting forth his appointment as guardian; the names and ages of his wards; that as heirs of Henry B. Myers, deceased, they were owners of the real estate in controversy here; that it was necessary for the support, care, maintenance, and education of his wards that said real estate should be sold, and prayed said district court for a license for such purpose. In accordance with the prayer of the petition of said guardian the district court of Douglas county made an order authorizing the guardian to sell the real estate of his said wards; and that portion of said lot not theretofore appropriated as hereinbefore stated by the Union Pacific Railway Company was sold to the defendant in error Alexander McGavock. The district court of Douglas county confirmed this sale, and, in pursuance thereof, and the order of the court, the guardian executed to the defendant in error Alexander McGavock the deed under which he claims title. The plaintiffs in error allege that this deed is void for the following reasons:

1. That the guardian making the sale was not the guardian of the persons of said minors, but only of their property in the state of Iowa, and he was not authorized to make the application to sell their property in this state. The contention of the counsel is that since the minors had

a guardian of their property and a guardian of their persons, the district court 'had jurisdiction to grant the license for the sale of their property to the guardian of their persons only. The minor children of Henry B. Myers had two guardians,—their mother, Susan B. Myers, who was their guardian by nature or natural guardian, and Philip Myers, who was their legal guardian; and if counsel are correct, then the only person the district court of ·Douglas county had jurisdiction to authorize to sell the property of these minor children was their mother. Section 58 of chapter 23, Compiled Statutes of 1893, provides: "When any minor, * * * residing without this state, shall be put under guardianship in the territory or country in which he resides, * * * the foreign guardian may file an authenticated copy of his appointment in the district court in any county in which there may be any real estate of the ward," etc. And section 59 of said chapter provides: "After filing such authenticated copy of his appointment, such foreign guardian may be licensed by the district court of the same county to sell the real estate of the ward of this state," etc. We are of opinion that the district court of Douglas county had no jurisdiction to grant the license to the natural guardian, as such, of the minor children of Henry B. Myers for the sale of their real estate. The authority of a guardian to sell the real estate of his wards for any purpose must be found in the statute; and our laws confer no authority on a natural guardian, as such, to dispose of the real estate of his ward, and no district court has jurisdiction to authorize a natural guardian, as such, to sell the real estate of his ward. The only kind of a guardian the district court has jurisdiction to authorize to sell the property of his ward is a guardian appointed and commissioned by a court having jurisdiction to appoint guardians; and to confer jurisdiction on a district court of this state to authorize a guardian to sell the property of his ward, it must appear that such guard-

ian had accepted such appointment and qualified and was acting as such guardian.   The natural guardian may become the legal guardian of his ward, but in order to become such legal guardian he must be appointed such by the proper authority, accept such appointment and qualify as such legal guardian.  (*Shanks v. Seamonds*, 24 Ia., 131.) As it appears that Philip Myers, at the time he made application to the district court of Douglas county for license to sell the property of his wards, was the duly appointed, qualified, and. acting guardian of the minor children of Henry B. Myers, decea-ed, and such facts appeared in the petition filed by him for such license, on the face of the petition the district court had jurisdiction to grant him the license prayed for, and he was the proper party, and the only proper party, so far as the record discloses, to make such application.

2.  That such guardian was not appointed in the state where the wards then resided.   The evidence in the record does not sustain this point.   In the petition filed in the district court, for the license to sell, it is stated that the wards were at that time residing in the state of Illinois; but it appears from the evidence that Henry B. Myers died at his residence in Mahaska county, Iowa.  His widow petitioned the county court of that county to appoint Philip Myers guardian of her minor children.  His estate was administered there, and he had there a homestead.  These facts raise the presumption that at the time Philip Myers was appointed guardian his wards were residing in the county in which he was appointed, and since there is no evidence in the record to the contrary that fact must stand as established.   It remains to be said of this point, however, that it would seem to be one which goes to the jurisdiction of the court that appointed the guardian rather than to the district court granting the license to sell.   The fact that the wards of Philip Myers were residing in the state of Illinois at the time he made application to the Nebraska

court for license to sell their real estate did not deprive him of control over them or their property, nor the latter court of jurisdiction to grant the license.

3. That Philip Myers did not file in the district court of Douglas county an authenticated copy of his appointment as guardian. As already stated, Philip Myers was appointed guardian by the county court of Mahaska county, Iowa. This was done on the 8th of November, 1864. The application to sell the real estate of his wards was made to the district court of Douglas county in June, 1874. The guardian at that time filed in that court a copy of his said appointment as guardian by the Iowa court. This copy is certified to by the clerk and under the seal of the circuit court of said Mahaska county; and the contention here is that the district court of Douglas county was without jurisdiction to license this sale because the copy of the letters of guardianship was not such an authenticated copy of the guardian's appointment as is required by sections 58 and 59, quoted above. While it appears that the guardian received his appointment from the county court of Mahaska county, Iowa, the certificate of the clerk of the circuit court of said county attached to the letters of guardianship recites that said circuit court at that time had jurisdiction in probate matters; and that the copy of the letters of guardianship, to which the certificate is attached, is full, true, and complete, and that the original remains on file in the office of such clerk. It is argued that this certified copy of the guardian's appointment was incompetent evidence under section 414 of the Code of Civil Procedure, which provides that a judicial record of another state may be proved by the attestation of the clerk and the seal of the court, together with a certificate of a judge or presiding magistrate that the attestation is in due form of law. Whether this certified copy of the guardian's appointment was the best evidence, or competent evidence, was a question for the district court hearing the application for license to sell, in

which proceeding the evidence was offered. It was for that court to say whether it was satisfied with the evidence offered to prove that Philip Myers was the then appointed, acting and qualified guardian of the minor heirs of Henry B. Myers, deceased. That court accepted the testimony as sufficient to prove that fact, and its finding is conclusive unless appealed from. (*Menage v. Jones,* 40 Minn., 254.) The finding and judgment of a court cannot be successfully assailed as void, in a collateral proceeding, because such court made such finding or rendered such judgment on incompetent evidence.

4. That the petition for license to sell the real estate was not verified by the guardian. The petition was verified by an attorney of the Douglas county bar, being the attorney and counsel who conducted the proceedings for the guardian. The failure of the guardian to verify his petition did not affect the jurisdiction of the district court of Douglas county, nor render its proceedings void. (*Hamiel v. Donnelly,* 75 Ia., 93; *Ellsworth v. Hall,* 48 Mich., 407; *Trumble v. Williams,* 18 Neb., 144.)

5. That no notice, either actual or constructive, of the application to sell was given to the wards. Section 49 of said chapter 23 provides: "A copy of such order [to show cause why the license prayed for should not be granted] shall be personally served on the next of kin of such ward, and on all persons interested in the estate, at least fourteen days before the hearing of the petition, or shall be published at least three successive weeks in such newspaper circulating in the county as the court shall specify in the order." The next of kin of these wards were Stephen B. Myers, an adult brother, and Susan B. Myers, their mother. These two filed their consent in writing in the district court of Douglas county to the proceeding instituted by the guardian and in such proceeding. This complied with the statutes quoted above so far as the next of kin are concerned. If any one else than this adult brother and his

mother, other than the wards themselves, had any interest in the lot sought to be sold, the record makes no mention of it, nor is there any claim here that the guardian's deed is void because others than the wards interested in the real estate were not notified of the proceedings for its sale. So that we have this single question : In a proceeding by a guardian to sell his ward's real estate for the education and support of said ward, must notice of such application be served on said wards in order to give the district court jurisdiction of said proceeding? If such notice is required by the section of the statute above quoted, then the guardian's deed, under which McGavock claims, and all the proceedings leading up to and upon which it is based are void, for no such notice was given. Counsel for plaintiffs in error say "that the wards were persons interested in the real estate within the meaning of said section 49; that the application to sell is a proceeding, on its face, prejudicial to the wards, because, if the application is successful, its effect is to turn the real estate into money, which may be squandered before they become of age, and that, therefore, notice of the application for license to sell should have been served on the wards." It is true the wards are persons interested in the estate; but that an application by their legally appointed, qualified, and acting guardian for a license to sell such wards' real estate for the purpose of maintaining and educating them is, on its face, a proceeding prejudicial to such wards, or one in its nature adversary to them, cannot, we think, be successfully maintained. Had this been an application to sell the real estate of these wards for the purpose of paying debts, then, it seems, counsel's construction of the statute would be correct, for such proceeding would in its nature be an adversary one to such wards, and a sale made of their real estate for such purpose without the statutory notice to them of the time and place of the hearing of the application therefor would be void. (*Mickel v. Hicks*, 19 Kan., 578.) But the guardian's sale under consideration was not made to

Myers v. McGavock. ·

pay debts.   The petition filed for the license to sell the real estate in controversy here set forth facts, which, if true, showed that a sale of this real estate was for the advantage of these minors.   The proceeding was instituted by their guardian for their benefit.   It was on their application, in effect, that the license to sell their real estate was granted, and not in any proceeding against them.   It is unfortunately true sometimes, through the lack of judgment or through the dishonesty of guardians or the failure to exercise vigilance on the part of courts, that minors are deprived of their property; but no legislature can enact a law, nor court lay down a rule of construction, that will always and in every case protect the orphan and secure him in his own.   The statutes of the state require that courts having authority to appoint guardians shall see to it that the persons so appointed are capable and honest; that they give and keep good the bonds required by the statute for the faithful execution of their trust and render to the court at frequent intervals accounts of their guardianship.   On the district court judges the law has conferred the exclusive power to say whether the facts exist which justify a sale of a ward's property by his guardian; to say whether the sale is a necessity to which the ward must submit; to say whether, in the judgment of the court, the sale asked to be authorized is for the best interests of the minor.   This is a great discretion and a sacred trust confided to district judges by the law, and they are thus made the guardians of the orphans of the commonwealth.   Their authority to authorize a guardian on his application to sell his ward's real estate was not meant to be exercised as a matter of course, but only after inquiry and investigation into all the facts and circumstances; and, not then unless the mind of the court is convinced that such sale is a necessity or is for the best interests of the ward.   We shall not attempt a citation of all the cases, nor indeed many of them, for and against the

proposition that notice to a ward, of the application of his guardian for license to sell his real estate for the maintenance and education of such ward, is essential to the jurisdiction of the court to order the sale. The authorities are as conflicting as they are numerous; but we think that the weight of authority is that such proceeding is one *in rem*,—a proceeding on behalf of the ward and not adversary to him,—and that notice to such ward of such proceeding is not essential to the jurisdiction of the court to grant the license for the sale. In support of this view, see *Gringnon's Lessee v. Astor*, 43 U. S., 318; *Mohr v. Manierre*, 101 U. S., 417; *Thaw v. Ritchie*, 136 U. S., 519; *Scarf v. Aldrich*, 32 Pac. Rep. [Cal.], 324; *Mohr v. Porter*, 51 Wis., 487, and authorities there collated. Opposed to this view are *Good v. Norley*, 28 Ia., 188; *Washburn v. Carmichael*, 32 Ia., 475; *Lyon v. Vanatta*, 35 Ia., 521; *Rankin v. Miller*, 43 Ia., 11. Indeed, it seems to be the settled rule of the supreme court of Iowa that in order to invest a court with jurisdiction to license a guardian to sell his ward's real estate that such ward must have notice of the application; and the rule has been consistently adhered to by that court. The rule in Mississippi appears to be the same as that in the state of Iowa. (*Hamilton v. Lockhart*, 41 Miss., 460; *Rule v. Broach*, 58 Miss., 522.)

Under a statute substantially like the one quoted above, and of which it is said that the Nebraska statute is a copy, the supreme court of Wisconsin at one time held that notice to the ward of an application by his guardian to sell his real estate was essential to confer jurisdiction on the court to grant the license. (*Mohr v. Tulip*, 40 Wis., 66); but the case was overruled by that court in *Mohr v. Porter*, 51 Wis., 487.

The decisions of the supreme court of Illinois are not uniform as to the rule as to whether notice to the ward of the application to sell his real estate is jurisdictional. In *Mason v. Wright*, 4 Scam. [Ill.], 127, it was said that the

proceeding by a guardian for a license to sell his real estate
is not a proceeding adversary to the ward's interest, and
that notice of such proceeding is not necessary to confer
jurisdiction on the court to authorize the sale.   This was
in 1842.   The same doctrine was announced by that court
in *Mulford v. Beveridge,* 78 Ill., 455; but in 1877, in
*Musgrave v. Conover,* 85 Ill., 374, that court held: " Where
the record of a proceeding by a guardian for the sale of
his ward's land fails to show any notice of the application
to the wards, the decree purporting to authorize the sale
will be void for want of jurisdiction, and may be attacked
collaterally."   Again, in 1887, in *Spring v. Kane,* 86 Ill.,
580, that court said: "A proceeding by a guardian to sell his
ward's land for his maintenance, being *in rem* and made on
behalf of the owner, it is only necessary the court should
have jurisdiction of the subject-matter to make an order to
sustain a sale made thereunder."

The cases cited from the state of Illinois serve to show
the bewildering conflict in the authorities on the subject
under consideration.

Counsel for plaintiffs in error insist, somewhat stren-
uously, that this court should follow the rule laid down by
the supreme court of Wisconsin in *Mohr v. Tulip, supra,*
because they say that our statute was adopted from Wis-
consin, and that in adopting the statute the legislature in-
tended to adopt and did adopt the construction placed
thereon by the supreme court of the state from which it
was taken.   We have already seen that the supreme court
of Wisconsin has overruled *Mohr v. Tulip,* but there is
still another thing in this connection.   *Mohr v. Tulip* was
decided in 1876, while our statute, which is said to be a
copy of the Wisconsin statute construed in that case, was
enacted by our legislature in 1866, or about ten years be-
fore the supreme court of Wisconsin put a construction upon
it.   The point made by counsel then is not tenable.   The
rule that when one state adopts the statute of another that

it thereby adopts the construction placed on such statute by the highest court of the state from which it is taken has no application when such construction is not placed on the statute until after its adoption.

6. That no notice of the application to sell was served upon the heirs presumptive of the wards. The ingenious argument of the able counsel is thus stated by them in their brief: "Now, in this case, Henry B. Myers, Susan B. Myers, and Sarah E. Myers were minor children, brother and sisters, and each one was the heir presumptive of the other. Each one was therefore entitled to notice of the application to sell the other's property. The fact that the guardian made one application to sell the property of all said minors does not alter the case. If he had made application to sell the property of Harry B. Myers alone, he would have been obliged to notify Sarah E. and Susan B. Myers as heirs presumptive. The fact that he was seeking at the same time to sell their own property made his default greater instead of less. Now, even if the guardian does represent the ward for the purpose of selling his own property he does not represent him for the purpose of waiving notice of the application to sell his brother's property. In this view of it, Susan B. Myers and Sarah E. Myers, plaintiffs in error, say: 'In 1874 application was made in the district court of Douglas county, Nebraska, to sell our brother's property. We were his sisters, his heirs presumptive, interested in his estate, and we were entitled to notice of that application to sell. We received no such notice, and we claim that the sale as to us is void. Our brother has since died, and we have succeeded by inheritance to his property.'" This argument of counsel is based on their construction of section 109 of said chapter 23. The section is as follows: "All those who are next of kin and heirs apparent or presumptive of the ward shall be considered as interested in the estate, and may appear and answer to the petition of the guardian, and when per-

sonal notice of the time and place of hearing the petition is required to be given, they shall be notified as persons interested according to the provisions respecting similar sales by executors and administrators contained in this subdivision." But the provisions of this section 109 are not applicable to a sale of the real estate of the ward by his guardian when such sale is made for the support and maintenance of the ward. The meaning of this section is that when any person other than the minor, such as an insane person, an idiot, a spendthrift, or a drunkard, shall be under guardianship, and an application shall be made by such person's conservator or guardian for license to sell his real estate, then the heirs presumptive, that is, all such persons as would inherit such person's property should he die immediately, shall be deemed interested in the estate, and notice of the application shall be served upon them.

7. That no bond was given by the guardian to the district judge and approved by him. A bond in proper form and with proper sureties was executed and filed in the court in the proceeding as required by the statute; but the record of the proceeding, in which the license to sell the real estate of the wards was granted, does not show that this bond was formally approved by the judge who granted the license. It is now claimed that this silence of the record is conclusive evidence that the bond was not approved by the judge, and his failure to formally approve the bond renders the entire proceeding void. On the trial of the case at bar the defendants proved by the attorney who conducted the proceeding on behalf of the guardian that the bond was in fact presented to and approved by the presiding judge. The fact of the approval of the bond, like any other fact, might be proved by the best evidence attainable. We are of opinion, however, that in this collateral proceeding the guardian's deed could not be declared void because the bond filed for the purpose of ob-

taining the license to sell the real estate was not formally approved. (*Emery v. Vrooman*, 19 Wis., 724; *Pursley v. Hayes*, 22 Ia., 11; *Hamiel v. Donnelly*, 75 Ia., 93.)

8. That no sufficient notice of the sale was given. The guardian, in his report to the court of his proceedings under the license granted him to sell the real estate of his wards, stated that he gave due and public notice of the time and place of the sale by posting up in three of the most public places in Douglas county three notices of the time and place of the sale, and by publishing such notice in the *Omaha Weekly Herald*, a newspaper printed and in general circulation in said county for three weeks successively next before the date of said sale. There is no dispute but that the notice of the sale was published for three weeks in the newspaper as was stated in the guardian's return of his proceedings to the court. No copy, however, of the posted notices was found in the files of the records of the proceedings of the guardian's sale. The district court which granted the license to make the sale, in its order confirming the same, made a finding that the proceedings of the guardian in making the sale had been in all respects regular and in conformity to law. We think that it must be presumed, especially when this sale is attacked collaterally, that sufficient evidence was offered to the court, when the sale came on for confirmation, that the notices thereof had been posted as the statute required and the guardian reported.

9. That the sale was not made by the guardian personally. We have not been cited to any authority or statute showing that a sale of real estate made by a guardian is void because the guardian did not personally attend or cry the sale. It certainly cannot be said that because the statute says that a guardian may file his petition and procure the order of a court under certain circumstances for the sale of his ward's real estate, that therefore the guardian must draw the petition and the other papers in such pro-

ceeding and attend to it personally and cannot do the same by an attorney; and we see no good reason why a guardian may not entrust the conduct of the sale of the real estate which he is making to his attorney or an auctioneer; and we are quite clear that this sale is not void because the attorney of the guardian actually made or cried the sale of the property.

10. That the description of the property sold was ambiguous and indefinite. The property sold by the guardian to McGavock is described in the guardian's report to the court as "the N. E. two-thirds ($\frac{2}{3}$) of lot eight (8) in block two hundred and three (203) of the city of Omaha, being all that portion of said lot eight (8) not belonging to the Union Pacific Railway Company." This description, while not very definite, was not void for uncertainty. It was a sufficient description to enable the property to be identified. An examination of all the proceedings on which the deed is based, made by the guardian of the minor heirs of Henry B. Myers, deceased, to Alexander McGavock, leads us to the conclusion that such proceedings and deed were and are valid, and that the said minor heirs were, by said proceedings and deed, divested of all their title in and to the real estate conveyed by their guardian to McGavock. There is one feature, however, in McGavock's title that remains to be considered. Fanny B. Myers, the widow, and Stephen Myers, the adult son of Henry B. Myers, deceased, are plaintiffs in error here and were plaintiffs below. Have these parties any interest remaining in the real estate conveyed to McGavock by Philip S. Myers? This widow and son appeared in the proceeding instituted by the guardian to sell the real estate of his wards and consented that the district court of Douglas county should grant a license as prayed for by the guardian. This widow at that time had a dower interest in this land and the adult son was one of the owners. Does it follow that because this widow and adult son entered their appearance

and consented to the proceedings instituted by the guardian of the minors to sell their real estate, the guardian, in making such sale, sold the interests of the widow and the adult son therein? We do not think that such a conclusion results. The guardian was not the guardian of the widow nor of the adult son, nor had he any authority to sell their interest in any real estate, nor did the district court of Douglas county have jurisdiction or authority to authorize him to sell their real estate. In fact, the guardian did not attempt to sell their real estate, but only the interests of his wards therein. The court did not authorize him, and could not authorize him, to sell anything more than the interest of his wards in the lot. The appearance entered and the consent given by the widow and adult son to the proceeding was to avoid the formality of serving a formal notice on them of the proceedings. Such appearance and consent made them parties to the proceeding, but it does not follow that because they were parties that such sale and conveyance of the minors' interest divested the interest of the adult son and the widow in the real estate sold by virtue of such proceeding. We do not say that in a proceeding by a guardian to sell the real estate of his minor wards the adult heirs might not make themselves parties to such proceeding and take such steps therein, by pleading, disclaimer, or otherwise, so that a sale and deed made in pursuance of such proceeding by the guardian would divest the interest of such adult heirs or other persons interested in the real estate; but we do say that this record does not disclose that the proceedings had by the guardian and the sale and deed of the real estate made by him pursuant to said proceedings were intended to, or did, divest the interest which the widow and adult son had in this real estate. This point is not argued, except perhaps incidentally, by counsel, but we have thought it but right that every point connected with the proceedings on which the title of the defendants in error depends

should be considered to avoid possible future trouble and
to set at rest the title of the real estate in question so far as
the defendants in error are concerned.   McGavock, as a
defense to this action, pleaded and proved in the court be-
low that he had been in the open, exclusive, notorious, and
adverse possession of the premises purchased by him at
the guardian's sale for more than ten years prior to the
bringing of this action.   During all this time he had oc-
cupied the premises under a claim of title thereto, and it
does not appear that either the widow or the adult son ever
paid any taxes on these premises during all this time, nor
in any other manner asserted any claim of title or owner-
ship thereto.   Now, this widow and adult son, having vol-
untarily made themselves parties to this proceeding, were
charged with notice of what was done therein.   The court,
by its order confirming the sale, directed the guardian to
pay this widow a stated sum in lieu of her dower interest
in the property, and to the adult son his distributive share,
as heir, of the proceeds of the sale.   This order was made
by the court on the theory that McGavock had acquired by
his purchase not only the interest of the minors in the real
estate sold, but that of the widow and adult son as well.
McGavock entered into possession of the real estate then,
not as a co-tenant of the widow and adult son, but under a
claim of title in himself to the whole property, and this
entry of McGavock, and the proceedings on which his pos-
session was based, all being with notice to the widow and
adult son, operated as an ouster of the widow and adult
son, and McGavock's possession from its incipiency was ad-
verse.   This adverse possession, then, of McGavock to this
real estate had, at the time this suit was brought, vested in
him whatever title the widow and adult son had previously
had therein.   It is by reason of this adverse possession and
the statute of limitations, rather than by reason of the
guardian's proceedings and sale of the land, that the inter-
est therein of the adult son and widow has been divested.

"One who has been in the open, notorious, exclusive, and adverse possession of real estate for ten years becomes vested with a valid title to the same." (*Parker v. Starr*, 21 Neb., 680.)

We next turn our attention to the consideration of the claim of title of the Union Pacific Railway Company to the portion of the property in controversy occupied by it. This corporation is in possession, claiming title to a portion of that part of the lot in controversy occupied by it by virtue of a conveyance from McGavock and his wife, under date of March 22, 1877. We have already seen that McGavock's title to this property was acquired by virtue of the guardian's deed and the proceedings on which the same was based. It is now argued by counsel for plaintiffs in error that the Union Pacific Railway Company was incompetent to take the title of this property by the conveyance from McGavock, and this contention is predicated on section 8, article 11, of the constitution of 1875, which is as follows: "No railroad corporation, organized under the laws of any other state, or of the United States, and doing business in this state, shall be entitled to exercise the right of eminent domain, or have power to acquire the right of way, or real estate for depot or other uses, until it shall have become a body corporate pursuant to and in accordance with the laws of this state." The Union Pacific Railway Company is, and was at that time, a corporation organized under the laws of the United States, and by reason of the constitutional provision just quoted was incompetent to take title to the real estate by the conveyance from McGavock; but this conveyance is not therefore void. It is, at most, voidable. Its title is valid against every one but the state, and can be divested only by proceedings brought by the state for that purpose. (NORVAL, J., in *Carlow v. Aultman*, 28 Neb., 672.) The Union Pacific Railway Company, because it took title to this property in violation of the constitution, did not thereby become

an outlaw; nor does the fact of its incompetency to be a grantee of such property authorize any one to appropriate the property who may see fit to bring a suit for that purpose. The citizen has no right, title, or claim, as such, to property attempted to be acquired in contravention of law, whether the person attempting such acquisition be an English lord, a Turkish pasha, or an ordinary foreign railroad company. It would be a monstrous construction of this constitution to say that if A should, for a valuable consideration, convey his real estate to B, that because B was incompetent under the law to take such conveyance, that therefore the title should revert to A. It remains to be said, of the part of the property occupied by this corporation which it attempted to acquire from McGavock, that the incompetency of the corporation to take the title does not in any manner help the claims of the plaintiffs in error, the widow and adult son of Henry B. Myers, deceased, whose title, we have seen, to this part of the real estate was not divested by the guardian's sale. The statute of limitations began to run when McGavock entered under his guardian's deed, and his conveyance and surrender of possession of part of the premises to a grantee incompetent to take did not arrest the running of the statute. But the railway company, like McGavock, pleaded and proved that it had been in the open, notorious, exclusive, and adverse possession of this real estate, claiming title thereto, for more than ten years prior to the bringing of this suit. This adverse possession then vested the title to the real estate occupied by the railway company in it as against all persons except the state of Nebraska.

The right to the possession of the other portion of the real estate occupied by the railway company was acquired on the 12th day of May, 1871, in pursuance of a writing in words and figures as follows:

"Be it known that I, Philip Myers, of the city of Chicago, state of Illinois, as administrator of the estate of

Henry B. Myers, deceased, late of the county of Mahaska, and state of Iowa, and also as agent of Stephen B. Myers, one of the children and heirs, and as guardian of the property of Harry B. Myers, Sarah E. Myers, and Susan B. Myers, remaining children and minor heirs at law of said Henry B. Myers, who died seized of lot number eight (8), in block two hundred and three (203), in the city of Omaha, Douglas county, have received from the Union Pacific Railway Company the sum of fifteen hundred dollars in the bonds of said city, in full payment and satisfaction of the damages accrued and awarded by reason of appropriation of a part of said lot eight (8), in block two hundred and three (203), in said city, by said Union Pacific Railway Company for depot grounds.     *     *     *

"Witness my hand at the city of Chicago, Illinois, this 12th day of May, A. D. 1871.

"Philip Myers,

"*Administrator of the Estate and Agent and Guardian of Heirs, as the Friend of Henry B. Myers, deceased.*"

Section 96 of chapter 16, Compiled Statutes, 1893, in force at the date of said writing quoted above, provides: "Whenever any railroad corporation shall take any real estate as aforesaid of any minor, insane person, or any married woman whose husband is under guardianship, the guardian of such minor or insane person or such married woman with the guardian of such husband may agree and settle with said corporation for all damages or claims by reason of the taking of such real estate and may give valid releases and discharges therefor." The evidence shows that the Union Pacific Railway Company has been in possession of the real estate, using and occupying it for railroad purposes, since the date of said writing or receipt quoted above. The able counsel for plaintiffs in error say: "Said receipt does not purport to be a settlement under said section 96, but on its face shows that it is a mere receipt for the amount of an award which had pre-

viously been made in some other proceeding; that the language of the receipt indicates the railway company had in some proceeding appropriated the portion of the lot referred to for depot grounds and that an award of damages for such appropriation had been made in favor of the owners of said real estate; that the real source of title of the railway company to the property in question is the proceeding for the appropriation of said lot and not the receipt." We think the deductions made by counsel are reasonable and probably correct, but we do not see how that helps their clients' case. The argument, in brief, is that the Union Pacific Railway Company, some time prior to May, 1871, had instituted condemnation proceedings, and in pursuance thereof took possession of this real estate, and that the amount of money paid to Philip Myers as guardian was the amount awarded as damages to the minors by reason of the appropriation of such real estate by the railway company, and that as the railway company was a corporation created under the laws of the United States, or in other words, that it was not a domestic corporation, it had no power or authority to exercise the right of eminent domain in this state; and that section 96, quoted above, is only applicable to domestic corporations. This section is a part of the general railroad corporation act in force at the time that the railroad company appropriated the property in controversy. The constitution of 1866, in force at that time, did not prohibit foreign railroad companies from building or operating roads in this state; and, since foreign railroad corporations were not then prohibited by the constitution or the laws from building and operating their roads in this state, we do not know of any rule of law or comity which prevented their acquiring, by purchase or settlements made for damages, the right to occupy and use such real estate as they needed. It is no doubt true that it was competent, then and now, for the legislature to prohibit a foreign railroad company from exercis-

ing the powers of eminent domain in this state, but in the
absence of legislation and in the absence of any constitu-
tional provision on the subject we cannot say that the ap-
propriation of this property with the guardian's consent
was wrongful or illegal. It is true that some sections of
the act, of which said section 96 is a part, apply exclusively
to domestic corporations, but we think that the provisions
of that act, in so far as they are applicable, apply not only
to railroad corporations organized under the laws of this
state, but also to all railroad corporations operating roads
in this state. Certainly it is true that the authority of the
railway company to operate its road, and to acquire by
contract with the owner the necessary real estate for that
purpose, is a question which cannot be inquired into in an
action of this character. But whether the railway cor-
poration had the right to exercise the power of eminent do-
main and condemn the real estate in·controversy is, under
the evidence here, wholly immaterial, as the receipt affords
evidence that if the railway company did appropriate this
property by condemnation proceedings, it also acquired the
right to the possession of it by means of a settlement made
with the guardian of the minor heirs in pursuance of said
section 96. It certainly cannot be questioned but that this
railway corporation might have taken a deed of convey-
ance of this real estate for railroad purposes from Henry
B. Myers, had he been living, and had it done so and en-
tered into possession of the real estate his heirs would not
be entitled to oust the railway company therefrom whether
the corporation had the right to build and operate a road
in this state at that time or not. We have been cited to no
authority, and indeed the argument has not been advanced,
that it is not competent for the legislature to provide that
the legal guardian of minor heirs may make settlement with
a railway corporation for damages to their real estate by rea-
son of its occupancy by a railway company. Counsel say,
however, that the act of congress under which the railway

company exists provides in what manner settlement shall be made with a. minor when his real estate is taken for railway purposes, and that as the receipt is not in conformity with this provision of the act of congress that it is no protection to the railway company. There are several things to be said of this argument. It is competent for the United States government, for its own purposes, to exercise the powers of eminent domain in any state of this Union. If congress can delegate the power to exercise the right of eminent domain in the states to a corporation created by the laws of congress, which we by no means concede, then, in that case, such corporation, in the exercise of such power, would have to comply with the laws of the state where it exercised such power. The provision cited by counsel from the act of congress probably had reference to the exercise of the power of eminent domain by the railway company in the territories of the Union, and where land was appropriated, the possession of which was in the citizen, but the legal title to which was still in the United States government. It is also to be remembered that a railway corporation does not acquire the absolute fee-simple title to real estate purchased or condemned by it for railway purposes, but only an easement therein, subject to be divested by non-user or abandonment; hence the provisions in said section 96, which authorize guardians of minors, whose real estate has been appropriated for railway purposes, to give valid releases and discharges for the damages sustained by such minors. It remains to be said of this portion of the real estate under consideration that the widow and adult son of Henry B. Myers, deceased, at the time of the execution of the receipt to the railway company by the guardian, quitclaimed all their interest in said real estate to said railway company.

Aware of the grave importance of the questions involved in this record we have held this case for some time, it has been examined by the commissioners and the and

judges, and the views expressed herein embody the unanimous opinion of the court. We have patiently and carefully considered all the points and arguments made by the counsel for the plaintiffs in error, and have reached the conclusion that the plaintiffs in error are not entitled to the possession of any of the real estate sued for herein, and that the learned district judge was entirely right in instructing the jury to find a verdict for the defendants in error. It follows that the judgment of the court below must be and the same is

AFFIRMED.