WILLIAM BRUSHA, APPELLANT, v. MAMIE PHIPPS, APPELLEE.

FILED MAY 20, 1910.    No. 16,052.

1. **Executors and Administrators: SALE OF LAND: CONFIRMATION: NOTICE.** An administrator's sale of real estate under license to pay debts may be confirmed by the district judge in vacation at chambers without 10 days' notice, under section 498 of the code, being given.

2. ————: ————: PROCEEDINGS IN REM. Such proceedings are of the nature of proceedings *in rem*, and are not actions governed by the provisions of the code.

3. ————: ————: HOMESTEAD: EVIDENCE. Real estate consisting of a house and part of certain lots in an incorporated city was purchased by a widow, whose only child was an adult married son living in another state. She lived in the house and rented rooms, had no one living with her as a member of her family, and there was no one under her care and maintenance. After her death the son claimed the property as the homestead of his

mother as against a purchaser at an administrator's sale to pay debts of her estate. *Held*, That the property was not exempt under section 2, ch. 36, Comp. St. 1909 (Ann. St. 1909, sec. 6276), and section 15, ch. 36, Comp. St. 1909 (Ann. St. 1909, sec. 6289).

APPEAL from the district court for Otoe county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*John C. Watson,* for appellant.

*Pitzer & Hayward, contra.*

LETTON, J.

This is an appeal from a decree refusing relief to the plaintiff in an action to quiet the title to certain premises in Nebraska City.

In 1872 Nancy Brusha, with her husband and son, lived in Phelps City, Missouri. The husband died that year, and from that time until 1889 she and her son, William Brusha, the plaintiff in this action, lived together. In 1889 the son married, and moved to Ong, Nebraska, where she lived with him until October of that year, when she removed to Nebraska City, and lived there until her death, with the exception of a few months' absence at different times for the benefit of her health. She had lived in a rented house until August, 1895, when she purchased the property in controversy. In 1890 her son left Nebraska, she never saw him afterwards, and for years before her death he had not communicated with her. From the time she bought the property, until about three or four years before her death, Mrs. Brusha lived in the house, and rented rooms, but, her health failing, she became unable to take care of the property, and therefore removed to a steam-heated apartment building in the city, where she was living at the time of her last illness. She died intestate, and the plaintiff is her only heir.

Upon the settlement of her estate claims were allowed in excess of the value of her personal property, and the

administrator of her estate applied to the district court for a license to sell real estate to pay the debts. A license was granted, and the property in controversy sold to Mamie Phipps at administrator's sale. The sale was confirmed, and an administrator's deed executed on September 21, 1907, under which Mrs. Phipps took and now holds possession. On the 9th of November, 1907, William Brusha began this action for the purpose of quieting his title to this property, alleging that it was the homestead of his mother, Nancy Brusha, at the time of her death.

A number of other issues were presented by the pleadings, but at the trial the issue was narrowed to the question as to whether the property constituted the homestead of the deceased at the time of her death, and hence, this is the only matter requiring consideration in this court. Much of the evidence taken was as to whether when Mrs. Brusha left the house some years before her death she had the intention of returning there to live, or whether she had abandoned it as her home; but, in the view we take of the law governing the case, it is unnecessary to consider this point. When Mrs. Brusha bought the property she was a widow, with an adult son, the plaintiff, who was then living in Arizona, and who was himself the head of a family consisting of a wife and children. She had no one dependent upon her, and no one ever lived there with her as a member of her family. Since she was not married, in order to entitle her to the homestead exemption, she must have been, as provided by section 2, ch. 36, Comp. St. 1909 (Ann. St. sec. 6276), "the head of a family, within the meaning of section 15." Section 15, ch. 36, Comp. St. 1909 (Ann. St. 6289), is as follows: "The phrase 'head of a family', as used in this chapter, includes within its meanings: *First.* The husband, when the claimant is a married person. *Second.* Every person who has resided on the premises with him or her, and under his care and maintenance, either: (1) His or her minor child, or the minor child of his or her deceased wife or husband. (2) A minor brother or sister,

or the minor child of a deceased brother or sister. (3) A father, mother, grandfather or grandmother. (4) The father or mother, grandfather or grandmother of a deceased husband or wife. (5) An unmarried sister, or any other of the relatives mentioned in this section who have attained the age of majority and are unable to take care of or support themselves." Mrs. Brusha falls within neither of these divisions. She was not married, and was not the head of a family, and therefore was not entitled to claim the property as a homestead. It was not exempt from sale by the administrator of her estate for the purpose of paying debts. *Emerson v. Leonard,* 96 Ia. 311; *Holnback v. Wilson,* 159 Ill. 148; *Walker v. Thomason,* 77 Ga. 682; *Betts v. Mills,* 8 Okla. 351.

This disposes of most of the points made in plaintiff's brief, except the contention that the confirmation is void because it was made at chambers in vacation without 10 days' notice to the adverse party. The plaintiff relies on the case of *Armstrong v. Middlestadt,* 22 Neb. 711, which holds that a judge has no authority to confirm a sale in chambers in vacation, unless 10 days' notice has been given to the adverse party or his attorney of record. The sale in that case was made under a decree of foreclosure of tax liens in a proceeding in which there was an adverse party, notice to whom, under section 498 of the code, was essential to jurisdiction. The sale in this case, however, was made in pursuance of a special power conferred by the statutes relating to the sale of real estate by executors and administrators for the purpose of paying debts of the deceased. *Poessnecker v. Entenmann,* 64 Neb. 409; *Bixby v. Jewell,* 72 Neb. 755. While the language of the syllabus is general in the case relied upon, it must be held to apply to "all cases" of sales under code provisions, and not to sales made under different statutory powers. A similar question was presented in *Stewart v. Daggy,* 13 Neb. 290, with respect to the authority of a judge of the district court to grant a license at chambers to a guardian to sell the real estate of his

ward. It is pointed out in the opinion by Judge MAX-
WELL that the power to sell property by guardians and
administrators was, in territorial days, exercised by the
probate court of the proper county, but that by the con-
stitutions of 1866 and 1875 this power was taken from
the probate court and conferred upon the district court.
It was held that, "in granting a license, the duties of a
judge of the district court are precisely the same as those
of a judge of the probate court were under the territorial
laws." See, also, opinion of court, and dissenting opinion
of Judge MAXWELL, in *Slack v. Royce,* 34 Neb. 833, ·846.
The same reasoning applies to sections 87 and 88, ch. 23,
Comp. St. 1909 (Ann. St. 1909, secs. 4961, 4962), which
provide for the return of the license and the confirmation
of the sale by the district judge. Section 87 provides: "The
executor or administrator making any sale shall *immedi-
ately* make a return of his proceedings upon the order of
sale in pursuance of which it is made to the judge of the
district court granting the same," etc. Section 88: "If
it shall appear to the district judge that the sale was
legally made and fairly conducted, and that the sum bid
was not disproportionate to the value of the property sold,
or if disproportionate, that a greater sum than above
specified cannot be obtained, he shall make an order con-
firming such sale, and directing conveyances to be ex-
ecuted." By section 57, ch. 19, Comp. St. 1909 (Ann. St.
1099, sec. 4751),.a judge of the district court at chambers
is authorized: "(5) To discharge such other duties or
exercise such other powers as..may be conferred upon a
judge in contradistinction to a court." We have hereto-
fore held that in a proceeding by an administrator to
sell real estate of his decedent for the purpose of paying
debts there are, strictly speaking, no adverse parties.
The proceeding is of the nature of an action *in rem.
McClay v. Foxworthy,* 18 Neb. 295; *Schroeder v. Wilcox,*
39 Neb. 136. This being the case, and the provisions of
the statutes relating to sales by administrators for the
payment of debts having been followed, no notice to the

plaintiff was necessary in order to confer jurisdiction upon the judge of the district court to confirm the sale in chambers, and the sale and confirmation were valid and effectual to pass the title.

The judgment of the district court, therefore, is

AFFIRMED.