WILLIAM N. HUNTER, APPELLEE, v. CORA MAY BUCHANAN, APPELLANT; WARREN D. TIBBITS ET AL., APPELLEES.

FILED JUNE 29, 1910.   No. 16,046.

1. **Insane Persons:** SALE OF LAND TO PAY DEBTS. A sale of real estate by a guardian of an insane ward, under license for the purpose of paying debts due from the ward, is a proceeding *in rem*, and not adverse to the interests of the ward.

2. ——: ——: NOTICE. In such cases the provisions of section 49, ch. 23, Comp. St. 1909, do not require the service of the notice of the application for a license to be made upon the insane ward.

3. ——: ——: APPROVAL OF BOND: COLLATERAL ATTACK. Where a license was legally issued for the sale of the real estate of an insane ward, the property sold for its value, the sale confirmed, deed made, and the proceeds duly accounted for by the guardian, the sale will not be held void upon collateral attack for the sole reason that the guardian's bond required by section 54, ch. 23, Comp. St. 1909, made to the judge of the district court, was not formally approved by such judge.

4. ——: GUARDIAN AD LITEM: DUTIES: APPEAL. The duties of a guardian *ad litem* duly appointed by a court to defend the interests of an insane ward do not necessarily terminate with the decision of the case in which he was appointed, but he has authority, in a proper case, to appeal said cause to the court of last resort.

APPEAL from the district court for Otoe county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*W. F. Moran,* for appellant.

*Paul Jessen* and *E. F. Warren, contra.*

REESE, C. J.

The facts in this case, as shown by the pleadings and evidence, may be briefly stated as follows: In 1891 Cora May Buchanan was the owner in fee of lots 1 and 2, in block 3, in Gray's addition to the village of Syracuse, Otoe county, in this state, and was managing and controlling her own property. There was a small house on lot 2.

Lot 1, a corner lot, was vacant. Desiring to build a house on lot 1, she applied to W. E. Page, a lumber dealer in Syracuse, for the loan of sufficient money for the construction of the house, or that she be furnished with the material necessary for that purpose and for which she could pay a part of the purchase price. A contract was entered into and the material furnished and for which she made a partial payment, but much less in amount than what she had promised and doubtless thought she could pay. The material was furnished and the house partly constructed. Mechanics' and laborers' liens accumulated, which were canceled by Page until he had invested in the property between $880 and $900, and which were claims against Mrs. Buchanan and largely, if not entirely, against the property. In the meantime Mrs. Buchanan had become insane and not competent to transact her own business or manage her property or affairs, nor had she the means whereby the indebtedness could be paid or her house completed. Her mother, Mary A. Tibbits, and her three brothers, Emery D. Tibbits, Arthur D. Tibbits and Warren D. Tibbits, were residents of Otoe county, and were her only prospective heirs and the only persons interested in her personal or financial welfare; she being a widow and childless. Her father was deceased and she had no near relatives save those above named. She was placed in the hospital for the insane near the city of Lincoln, where she now is, with no prospect of recovery. Soon after her failure to complete her house on lot 1, and on the 30th day of July, 1902, Emery D. Tibbits, one of the brothers above referred to, was duly appointed her guardian by the county court of Otoe county, he having qualified as required by law, and entered upon the discharge of his duties as such guardian. Subsequently thereto he made his application to the judge of the district court for Otoe county for license to sell lot 1 for the purpose of paying the liens upon the property, alleging that its value was $800. The county commissioners gave their approval of the proposed sale,

the license was granted, bond was given by the guardian, and the lot sold to W. E. Page for the sum of $725, the sale confirmed and deed executed. The price for which the lot was sold was applied to the payment, in part, of Page's claims; the unpaid remainder was canceled by him, so that the real results of the sale were more than the value of the property. The only alleged defect in this proceeding was the failure to serve notice on Mrs. Buchanan, and it is claimed that for that reason the sale was void. This presents the question as to whether such notice was essential to the jurisdiction of the court granting the license.

In support of the contention that such notice was necessary to confer jurisdiction and that the sale without it was void, we are cited to *Myers v. McGavock*, 39 Neb. 843. In that case the guardian applied for a license to sell the real estate of his minor wards for the purpose of raising funds to be used in their maintenance and education, and the contention was made that the sale was void for the reason that the notice of the application was not served upon the wards. That contention was based on section 49, ch. 23, Comp. St. 1909 (Ann. St. 1909, sec. 5418), which is as follows: "A copy of such order shall be personally served on the next of kin of such ward, and on all persons interested in the estate, at least fourteen days before the hearing of the petition, or shall be published at least three successive weeks in such newspaper circulating in the county as the court shall specify in the order." The court, by a commissioner, held that, as the proceeding had for its object the maintenance and education of the wards, and therefore for their benefit, it was not adversary and no notice as to them was necessary. It is true that the commissioner held in the opinion, by way of argument, but not deciding any question involved in the case, that had the application been for any other purpose than the maintenance and education of the wards a different rule would have been applied and a notice would have been necessary. But this was purely dictum, and such

holding was in no sense necessary to the decision of the case then pending.

We have searched the statute in vain for any intimation of a rule different in one case from the other. It is provided in section 22, ch. 34, Comp. St. 1909 (Ann. St. 1909, sec 5392) that guardians, whether for minors or other persons, "shall pay all just debts due from the ward out of his personal estate and the income of his real estate, if sufficient; or if not, then out of his real estate, upon obtaining a license for the sale thereof, and disposing of the same in the manner provided by law." The statutes confer jurisdiction upon the district court and the judge thereof to grant licenses to guardians to sell the real estate of their wards. If it is proper and legal to issue the license in a case brought for one purpose, it must be equally so in all, for the statutes make no distinction. As bearing upon the question upon whom the notice must be served, under the provisions of section 49, above quoted, reference might be made to section 109 of the same chapter, which provides: "All those who are next of kin and heirs apparent or presumptive of the ward shall be considered as interested in the estate, and may appear and answer to the petition of the guardian, and when personal notice of the time and place of hearing the petition is required to be given, they shall be notified as persons interested according to the provisions respecting similar sales by executors and administrators, contained in this subdivision." Such are the "persons interested in the estate," referred to in section 49. We think it must be conceded that there is no direct provision of the statute requiring notice of the application to be served upon the ward.

In *Mohr v. Manierre*, 101 U. S. 417, a question quite similar to this was under consideration by the supreme court of the United States. In that case the contention arose upon the alleged failure of the guardian of an insane ward to publish notice in the manner provided by the statutes of Wisconsin, some claiming that the notice was,

and others that it was not, published for the full period required by the statute. In writing the opinion Mr. Justice Field said: "We shall assume, however, that the notice was not published for the full period prescribed, and the question for consideration is whether such omission, all other requisites of the statute having been complied with, rendered the order of the court invalid *as against the plaintiff Mohr*, the then lunatic; or, in other words, whether such publication was essential to the jurisdiction of the court to grant the license to sell." After stating the statute and discussing the subject at some length it is said: "It is apparent from these sections that the publication of notice of the hearing is only intended for the protection of parties having adversary interests in the property, and is not essential to the jurisdiction of the court. It may be dispensed with if the parties having such interests consent to the sale. The consent could not be signed by the lunatic, for he, by his condition, would be incapable of giving a consent; and yet upon the others' consent, the court could proceed to act without notice to him. Nor, indeed, was there any reason why publication of notice should be made for other parties than those who held adversary interests. The lunatic could not be affected by such publication any more than by his consent. The application of the guardian to the county court was required by the law only as a check against any improvident action by him. There was nothing in the nature of the proceedings which required a notice of any kind, so far as the rights of the lunatic were concerned. The law would have been free from objection had it simply authorized, upon the consent of the court, a sale of the lunatic's property for the payment of his debts. The authority of the court in that case, as in this, would have existed to license the sale whenever it appeared that the personal estate of the lunatic was insufficient to pay his debts, and that a sale of his real property was necessary for that purpose. There is no charge of fraud in the action of the guardian, nor is it

suggested that the property sold did not bring a fair price. The simple question is whether, as against the lunatic, the license to sell was invalid for insufficient publication of notice of the hearing, the same being, as already stated, required only for the protection of other parties interested in the estate. The decision of this court in *Grignon's Lessee v. Astor*, 2 How. (U. S.) *319, to which we have already referred, would seem to be decisive on this point. Indeed, it goes beyond what is required for the affirmance of the judgment here."

The case of *Mickel v. Hicks*, 19 Kan. 578, cited in *Myers v. McGavock, supra,* is not in point in that case nor in this, to the extent that the question there was as to the proceedings of an administrator in the sale of real estate under the statutes of that state in the matter of giving notice. The question arose as to whether the sale of real estate by an administrator was not a proceeding *in rem?* Judge Brewer, in writing the opinion, says: "An examination of the authorities discloses a wonderful disagreement"—citing a number of cases holding that they do. He, however, gives his adherence to the opposite view, apparently, that, upon the death of the owner of real estate, the title and possession pass immediately to his heirs; that it is not sold as of course, but only when necessary to pay the debts of the deceased; that until that fact is judicially established the heirs may not be divested of their title, and before one is divested of title to property he ought to have his day in court.

In *Scarf v. Aldrich*, 97 Cal. 360, the statute required the order of the sale of the ward's real estate to be "personally served on the next of kin of the ward, and upon all persons interested in the estate," etc. (which is identical with the statute in this state), or the publication thereof for three successive weeks. It was contended that by reason of a defective notice the sale was void. It was also contended that proceedings by a guardian for the sale of his ward's land were adverse to the ward, and that a substantial compliance with the statute was a pre-

requisite for obtaining authority to proceed. Upon this part of the case the court said: "Respondent's principal error lies in the first part of his contention, viz., that the proceedings are adverse to the ward; for in fact the proceedings are by the ward and for his benefit. Our statute does not require that notice shall be given to or served upon the ward, thus emphasizing what is apparent from the nature and object of the proceeding, and clearly distinguishing it from a proceeding by an administrator to sell the real estate of the intestate to pay debts, which is clearly adverse to the heir, and therefore a valid and sufficient notice to the heir is essential to give the court jurisdiction over him as party to the proceeding. But in the case of guardians' sales, the minor is in court by the filing of the petition, and submits his property to the jurisdiction and order of the court. An order for the sale of the property is not an order against or adverse to the minor, but is a granting of his request. It is not a judgment *in personam,* but operates only on the property, and is therefore *in rem.*" See, also, *Agricultural Ins. Co. v. Barnard,* 96 N. Y. 525.

In 21 Cyc. 125, it is said in the text: "In many jurisdictions it is held that in the absence of a statutory requirement notice is not required to be given upon application for the sale of the land of minors"—citing cases from a number of states. It must be conceded that, aside from the holdings of the court in this state, there is, to use the language of Judge Brewer in *Mickel v. Hicks, supra,* "a wonderful disagreement" of authorities. It is true, we think, that practically all agree that if a proceeding by a guardian to sell real estate of his ward is not adversary, but in the nature of a proceeding *in rem,* and the statute does not in terms require the notice to be served upon the ward, the failure to cause such notice to be served will not render the sale invalid. Many of the courts have held that the application to sell real estate by an administrator is an adverse proceeding, while a similar application by a guardian to sell the land of his ward is

not, but we do not call to mind any case holding the reverse, the reasons given being substantially as stated in *Mohr v. Manierre,* 101 U. S. 417, herein above referred to. In this state it has been heretofore held in at least two cases that an application by an administrator to sell real estate belonging to the estate of which he is such administrator is not an adversary proceeding, but *in rem.* *McClay v. Foxworthy,* 18 Neb. 295, and *Schroeder v. Wilcox,* 39 Neb. 136, which are followed and approved in *Brusha v. Phipps,* 86 Neb. 822, decided during the present term of this court. Such being the rule adopted in this jurisdiction, it follows with the stronger reason that it must be held to apply to the sale in question, and that it was not void. We therefore hold that the sale of the lot referred to as lot 1 was valid and transferred the title thereto to the purchaser.

The attack made upon plaintiff's title to lot 2 is upon the ground that the bond of the guardian given to the judge of the district court in connection with the application for license to sell said lot 2 was approved by the clerk of the district court, and not by the judge, as required by section 5423, Ann. St. 1909 (Comp. St. 1909, ch. 23, sec. 54), and that for that reason the sale of said lot was void. In support of this contention the case of *Bachelor v. Korb,* 58 Neb. 122, in connection with a number of decisions of other courts, is cited. So far as the record shows, every essential step in the proceeding, except as to the approval of the bond, was regular and in strict accordance with the requirements of the statute. With the exception of the testimony of E. F. Warren, Esq., who was the attorney for the guardian in the application for license to sell, the record is bare of any facts in connection with what occurred at the time the bond was approved. Mr. Warren stated frankly upon the witness stand that, as the transaction occurred some three or four years before the giving of his testimony, his memory was not clear upon the subject. He was asked to give his best recollection of the transaction. His answer

was: "As I recollect this proceeding, I came into court when Judge Jessen (judge of the district court) was on the bench. It was in the morning. I then presented to him the papers in the case, together with the bond for signature, and that he was busy hearing some other matters, and he said to take it to the clerk of the court. Now, that is my recollection of the way that was. Of course, as I said before, I wouldn't swear to it, because that was about three or four years ago," and that he then took the bond to the clerk. There is no showing in the record that the district court was not in session on the date of the approval of the bond, and we must assume that Mr. Warren's recollection in that particular was correct. Had he been mistaken, the attorney representing the opposite side of the case would certainly have shown it; the records being at hand at the time. This being true, the act of the judge and clerk must be held to have been the action of the court, and the question arises, would this slight deviation render the whole proceeding void? The bond was made payable to the judge of the district court as required by law.

In *Bachelor v. Korb, supra,* it is said, quoting from the opinion: "This bond was never presented to, nor in any manner approved by, the judge of said district court. It was, however, filed in the court and approved by the clerk thereof." So far as is shown by the decision, the court was not in session and the bond was filed in vacation without the knowledge or acquiescence of the judge, and wholly without his direction or approval, and the sale was held void. In this respect that case is to be distinguished from this and is no authority for holding the sale in this case void. In the course of the opinion the writer, at page 127, refers to the opinion written by himself in *Myers v. McGavock,* 39 Neb. 843, and quotes from what is said at page 865, a part of which is as follows: "On the trial of the case at bar the defendants proved by the attorney who conducted the proceeding on behalf of the guardian that the bond was in fact presented to and ap-

proved by the presiding judge. The fact of the approval of the bond, like any other fact, might be proved by the best evidence attainable. We are of opinion, however, that in this collateral proceeding the guardian's deed could not be declared void because the bond filed for the purpose of obtaining the license to sell the real estate was not formally approved. *Emery v. Vrooman,* 19 Wis. *689; *Pursley v. Hayes,* 22 Ia. 11; *Hamiel v. Donnelly,* 75 Ia. 93."

We have examined the cases cited and find that they fully and without reservation sustain the reasoning of the commissioner in both the *Bachelor v. Korb* and *Myers v. McGavock* cases, *supra,* and that by the reasoning and logic of both cases the sale in this case should be held valid. It may not be amiss to here state that the record and proofs as touching both sales involved in this inquiry show that the utmost good faith has characterized every step taken by the two guardians (brothers of Mrs. Buchanan) and by the purchasers of the lots in question. In each case the property was sold for its full value, and her estate has received full and due credit and actually received the benefits of the amounts for which the lots were sold. There is no semblance of fraud on the part of any one connected with either of the transactions, and we the more readily affirm the decision of the district court.

After this suit was commenced, the defendants, the Tibbits, having failed to answer, a default was entered against them, including Warren D. Tibbits, the guardian of Mrs. Buchanan. The court then appointed Mr. W. F. Moran guardian *ad litem,* who filed his answer consisting of a general denial, and alleging a number of affirmative defenses. Subsequently the guardian and other members of the family obtained leave and answered, setting up the facts and in substance admitting plaintiff's equities. The guardian *ad litem* remained in the case, seeking to support the title of the ward, and when the cause was determined in favor of plaintiff took this appeal. Practically

from the date of the filing of the answers by the general guardian and other presumptive heirs of Mrs. Buchanan there arose something of a contention between the general guardian and the guardian *ad litem* as to the right of the latter to maintain control of the defense and take this appeal. A motion to dismiss the appeal was filed in this court and overruled. At each step of the proceedings the authority of the guardian *ad litem* has been questioned, as matter of law, and we are asked to decide the question as to the continued powers of such guardian. In 22 Cyc. 706, the subject of the powers of guardians *ad litem* is discussed and cases cited in support of the text, but of which the limited time at our disposal will not permit a review. It must be sufficient to say that it is there shown that such guardian does not become *functus officio* by the rendition of a judgment or decree in the cause in which he has been appointed, but that he may take and prosecute an appeal therefrom. In all cases he should exercise care to subserve and conserve the interests of his ward alone. *Wirth v. Weigand,* 85 Neb. 115.

The judgment of the district court is in all things

AFFIRMED.

LETTON and SEDGWICK, JJ.

We concur in the conclusion, but express no opinion as to the third point in the syllabus and the second point discussed in the opinion.

FAWCETT, J., dissenting.

I am unable to reconcile the majority opinion with section 54, ch. 23, Comp. St. 1909, or with the construction of that statute so clearly and distinctly made in *Bachelor v. Korb,* 58 Neb. 122. The section of the statute reads: "Every guardian licensed to sell real estate, as aforesaid, shall, before the sale, give bond to the judge of the dis-

trict court with sufficient surety or sureties, to be approved by such judge, with condition to sell the same in the manner prescribed by law for sales of real estate, by executors and administrators, and to account for and dispose of the proceeds of the sale in the manner provided by law."

In construing that statute in *Bachelor v. Korb*, the first three paragraphs of the syllabus read as follows:

"(1) The provision of the statute (Comp. St. 1897, ch. 23, sec. 54), requiring a guardian licensed to sell the real estate of his wards to give a bond to the judge of the district court, to be approved by such judge, is mandatory.

"(2) The district courts are not invested with discretion to require or not a guardian appointed in this state, when licensed to sell lands in this state of his wards, to give the bond required by said section 54.

"(3) Such a guardian's sale of the lands of his ward is void unless, before such sale, the guardian executes the bond required by said section 54. The judge of the district court granting the license must be the obligee in the bond, and it must be approved by such judge."

It is not disputed that the district judge did not approve the bond. The uncontradicted evidence shows that the attorney for the guardian tendered the bond to the district judge while he was upon the bench hearing a case, and that the judge, without even looking at the bond, directed counsel to take it to the clerk. The bond was taken to the clerk and by him approved. In my judgment, and under the rule announced in *Bachelor v. Korb*, the bond was absolutely void. It will not do to say that the action of the judge while upon the bench, in directing the attorney to take the bond to the clerk, was an approval by the court. If the statute permitted the approval of such bond by the court, I think it is clear that that would have been sufficient. But the court is not given the power to approve such bond. The bond must run to the district judge and must be approved by him as judge, and not when sitting as a court. Such a proceeding is

purely statutory and the statute must be literally complied with. The fact that the purchaser acted in good faith and paid a full consideration for the property cannot avail him anything. He was bound to know that the guardian had no authority to make the sale. In the eighth paragraph of the syllabus in *Bachelor v. Korb,* we held: "The rule of *caveat emptor* applies to a purchaser at a guardian's sale of the real estate of his ward."

In *Veeder v. McKinley-Lanning Loan & Trust Co.,* 61 Neb. 892, *Bachelor v. Korb, supra,* is cited with approval and quoted from as follows: "The rule of *caveat emptor* applies to a purchaser at a guardian's sale of the real estate of his ward. * * * But the defendants in error, though they may have paid a valuable consideration for this real estate, are not innocent purchasers of it. One who purchases real estate at a guardian's sale, or purchases from the vendee of that sale, must take notice at his peril of the authority of the guardian to make the sale. The doctrine of *caveat emptor* applies to purchasers at guardians' sales."

In *Neary v. Neary,* 70 Neb. 319, we again put the seal of our approval upon *Bachelor v. Korb* in the following language: "The cases of *Bachelor v. Korb,* 58 Neb. 122, and of *Veeder v. McKinley-Lanning Loan & Trust Co.,* 61 Neb. 892, are instructive cases upon the doctrine followed in this state."

If I could see any way to affirm the judgment in the case at bar without doing violence to the statute and to our former holdings, I would be glad to do so. But, however unfortunate the situation of the purchaser at the guardian's sale may be, the court, in my judgment, is powerless to give him any relief in this case.