CHARLES W. MEAD, APPELLEE AND CROSS-APPELLANT, V. GUILES J. POLLY, APPELLEE AND CROSS-APPELLEE: GUILES J. POLLY, GUARDIAN, ET AL., APPELLANTS AND CROSS-APPELLEES: GUARANTY FUND COMMISSION ET AL., CROSS-APPELLEES.

FILED DECEMBER 31, 1929. No. 27009.

*Sherman W. McKinley* and *George W. Leamer*, for appellants.

*Sidney T. Frum* and *Rose, Wells, Martin & Lane*, contra.

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ., and DINEEN, District Judge.

GOSS, C. J.

This appeal relates to the foreclosure of a mortgage. The guardian of Fanny Polly, insane, and her guardian *ad litem* appeal because the judgment allowed the plaintiff mortgagee to be subrogated by reason of prior liens paid off with the proceeds of his mortgage. The plaintiff cross-appealed because the court denied his right to a decree on his mortgage and because the amount awarded him was somewhat less under the finding and order of subrogation than would be due on his mortgage.

Inasmuch as the sustaining of the cross-appeal of the plaintiff would dispose of all the other issues in the case, we shall proceed to consider whether the plaintiff's mortgage was valid.

On April 30, 1915, Guiles J. Polly and Fanny Polly, his wife, executed and delivered a first mortgage on the 155 acres involved in favor of the United States Trust Company and a second mortgage thereon in favor of the same company for $600. While these mortgages still subsisted, Fanny Polly was, on March 27, 1921, adjudged insane, and was committed to the state hospital at Norfolk. On December 23, 1922, Guiles J. Polly filed in the county court his petition to be appointed guardian of his wife. On January 15, 1923, he was so appointed, he qualified and ever since has been such guardian. On December 26, 1922, Mr. Polly applied to the Omaha Trust Company in writing for a loan of $8,000 on this land, stipulating that the mortgage

should be a first lien, appointing an agent to receive the money, and authorizing the deduction, from the proceeds of the loan, of any advances so made. On January 31, 1923, the guardian filed in the district court for Dakota county a petition for a license to execute a mortgage for $8,000 on the said land owned by him but in which Fanny Polly had an interest by reason of her relationship to him. He pleaded rather fully the existing liens on the property and certain expenses of the guardianship and of his ward, showing that the total amount of the proceeds of the loan would be needed for these purposes. On February 8, 1923, the judge of the district court made the order authorizing the guardian to execute a mortgage upon the interest of said Fanny Polly and Guiles J. Polly for $8,000 for the purposes named.

On March 31, 1923, Polly, for himself and as guardian for his wife, executed and delivered to the Omaha Trust Company a mortgage for $8,000 on the land to secure a note for that sum. The note and mortgage were afterward assigned to plaintiff. A considerable portion of the proceeds was used to pay off the two mortgages to the United States Trust Company and to discharge tax liens on the property. The balance of the $8,000 was paid to Polly to be used for the purposes stated in his application.

In their original brief the appellants set forth only two errors relied upon for reversal: First, that the court erred in allowing the plaintiff to be subrogated; and, second, that it erred in allowing 10 per cent. interest. But in their reply brief they went directly to the main point in plaintiff's cross-appeal and presented the question whether section 1436, Comp. St. 1922, which was in effect when the license to execute plaintiff's mortgage was granted, authorized the guardian to execute the mortgage upon the homestead standing in his name. The appellants take the negative of that question; upon the affirmative depends plaintiff's rights to establish the full lien of his mortgage as contended for in his cross-appeal.

So the first and chief issue between the parties is this: Had the district court authority to grant to Guiles J. Polly,

guardian of Fanny Polly, the right to mortgage her interest in land of her husband in which she had a homestead interest and an inchoate right to take under the statutes of descent if she survived her husband?

In 1927 the history of section 1436, Comp. St. 1922, was carefully reviewed down to and including the amendment in chapter 104, Laws 1923, and it was held constitutional as against an attack involving the question whether the amendment shown in chapter 205, Laws 1921, contained more than one subject clearly expressed in the title of the act. *In re Estate of Austin,* 116 Neb. 137.

The decree of the district court in the case at bar did not expressly find nor adjudge the section unconstitutional. It merely found, referring to plaintiff's mortgage on the homestead, that "the said mortgage is not a valid lien thereon because it was not signed and acknowledged by the said Fanny Polly, and plaintiff is not entitled to the foreclosure thereof." Nor do appellants expressly argue that section 1436 is unconstitutional. Rather they say it does not apply to such a state of facts as involved here. In their reply brief they say: "This particular point has never been decided by this court. It is a question of the reading of the statute."

They rely upon and stress the lack of notice given to Fanny Polly when the license was obtained and by implication suggest that, if the statute was otherwise applicable as a basis for a license, it was unconstitutional in that it allowed Fanny Polly to be deprived of her property without due process of law, because the statute does not provide for notice. Nor was any notice given her of the proceedings in which the license to mortgage was granted.

In *Myers v. McGavock,* 39 Neb. 843, it was held: "An application by a guardian for license to sell the real estate of his wards for their maintenance and education is a proceeding *in rem*—one instituted by their guardian for their benefit. It is, in effect, the application of the wards. It is not a proceeding adversary to them; and notice to them of such application is not essential to the jurisdiction of the district court to grant the license."

In *Hunter v. Buchanan,* 87 Neb. 277, Chief Justice Reese writing the opinion, it was held: "A sale of real estate by a guardian of an insane ward, under license for the purpose of paying debts due from the ward, is a proceeding *in rem,* and not adverse to the interests of the ward. In such cases the provisions of section 49, ch. 23, Comp. St. 1909, do not require the service of the notice of the application for a license to be made upon the insane ward." The opinion quoted from one of like effect, delivered by Mr. Justice Field in *Mohr v. Manierre,* 101 U. S. 417, in a case likewise involving the real estate of an insane person under a Wisconsin statute.

Although it is not the universal rule, yet it has been held uniformly by this court that, in proceedings under a license obtained "by an administrator to sell real estate of his decedent for the purpose of paying debts, there are, strictly speaking, no adverse parties. The proceeding is of the nature of an action *in rem." Brusha v. Phipps,* 86 Neb. 822; *McClay v. Foxworthy,* 18 Neb. 295; *Schroeder v. Wilcox,* 39 Neb. 136. Such being the rule adopted in administrator's sales in this jurisdiction, "it follows with the stronger reason" that it must apply to sales by guardians of insane wards, as was stated in *Hunter v. Buchanan, supra.*

So we are of the opinion that, for the mortgaging of real estate by a guardian of an insane ward, the proceeding by which a license is granted under section 1436, Comp. St. 1922, by a district court for the purposes named therein is a proceeding *in rem* and not adverse to the interests of the ward. In such cases the provisions of the foregoing section do not require service of the notice of the application for a license to be made upon the insane ward.

Section 1436 provides that a district court or judge thereof may grant authority to guardians of estates to mortgage any real estate belonging to such estates for the purposes named. Appellants assert that the land involved here was not real estate belonging to Fanny Polly and therefore it did not come under the statute. It cannot be disputed that she had an interest in the land by virtue of

her homestead right and an interest therein by virtue of her inchoate right to take by descent if she survived her husband; and that she could not be divested of her homestead right by conveyance or incumbrance save by an instrument in which she was joined by her husband. Comp. St. 1922, sec. 2819.

In *Galligher v. Smiley*, 28 Neb. 189, it was held that a homestead is constituted by residence of the family and by selection according to law. "Where these things exist, the homestead becomes a right in the premises, exempted by law from forced sale."

Section 5586, Comp. St. 1922, says: "The term 'real estate,' as used in this chapter, shall be construed as co-extensive in meaning with 'lands, tenements and hereditaments,' and as embracing all chattels real, except leases for a term not exceeding one year."

The interest of Fanny Polly in the real estate was a vested interest. It could not be divested by her husband alone either by deed or by will. It may be alienated or abandoned, but in this instance it has not been abandoned. It is still the family homestead. Whether a homestead right is technically an estate or is a chattel real it is unnecessary to determine here. It is a more essential right than a leasehold estate for a year and a day, which is defined by the statute as a chattel real. For the purposes of this case, we hold that the homestead right of a wife in lands owned by the husband and occupied by the family as a home should be construed under section 5586, Comp. St. 1922, as "real estate."

We have shown that the interest of Fanny Polly in the land was an interest in real estate; and that no notice was given her and none was necessary in the proceedings in the district court in which license was granted her guardian to mortgage the lands involved. It therefore follows that section 1436, Comp. St. 1922, does not, by reason of not requiring notice to a ward, violate the constitutional provision prohibiting the taking of property without due process of law. The district court had jurisdiction of the sub-

ject-matter and of the parties and was authorized to grant the license.

No appeal was taken from the judgment of the district court granting the license to make the mortgage sought to be foreclosed by plaintiff. Therefore, the attack thereon by the defendants, who are appellants here, is a collateral attack and cannot be sustained. The guardian had given a bond and he and his surety are legally responsible for the failure, if any, to protect the rights of the ward in the distribution of any of the net balance of the proceeds of the mortgage after payment of the existing liens on the land. Plaintiff's mortgage and the liens paid by him were valid and were fully proved. No valid defense was shown. He should have had judgment.

Having reached the conclusion that the plaintiff's mortgage is valid and should be enforced in full, it follows that the decree was erroneous; and it becomes unnecessary to consider the claims of the appellants arising by reason of the erroneous decree allowing subrogation only.

The judgment of the district court is reversed, with directions to enter a decree in favor of the plaintiff for the amount due on his mortgage, including, of course, the liens of taxes paid by him under the provisions of the mortgage.

REVERSED.